[Civ. No. 12623. Third Dist. July 13, 1971.]

BOARD OF SUPERVISORS OF MODOC COUNTY,
Plaintiff and Respondent, v.
MERVILLE E. ARCHER, as County Auditor, etc., et al.,
Defendants and Appellants.

718

## COUNSEL

Robert A. Barclay, District Attorney, for Defendants and Appellants.

Carr, Kennedy, Peterson & Frost, Paul B. Baker and Laurence W. Carr for Plaintiff and Respondent.

## OPINION

**BRAY, J.**[*]—Appellants appeal from a judgment of the Modoc County Superior Court granting a peremptory writ of mandate commanding respondents Modoc County Auditor and Assessor, respectively, to reduce certain tax assessments to zero.

### QUESTIONS PRESENTED

1. The board of supervisors are entitled to bring this action.

2. Mandamus is the appropriate remedy.

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

3. The board of equalization erred in holding that as a matter of law the permits and leases were not taxable.

RECORD

Appellant Modoc County Assessor levied certain possessory interest tax assessments for the 1968-1969 and 1969-1970 taxable years. Thirty-five of these tax assessments were on grazing permits issued pursuant to section 315b of title 43 and section 580L of title 16 of the United States Code. Thirty-three assessments related to agricultural leases. The 68 owners of the permits and leases protested these assessments to the board of supervisors, contending that their interests had no cash value. The board, sitting as a board of equalization, held that the grazing permits had no cash value, that the full cash value of the agricultural leases was zero, and ordered the assessment roll to be reduced accordingly. Appellant auditor refused to make the required changes in the assessment roll, to issue warrants for tax refunds or to cancel the assessments. Appellant assessor in the two succeeding years continued to treat these grazing permits and agricultural leases as possessory interests and to assess them. Thereupon, respondent board of supervisors filed in the Modoc County Superior Court a petition for writ of mandate to compel appellants to follow the determination of the board of equalization. After a trial the superior court issued a writ of mandate compelling appellants to cancel to zero the possessory interest tax assessments for the 1968-1969 and 1969-1970 taxable years, to disburse refunds to taxes collected on said assessments and cancel delinquent taxes on said assessments, if any, and compelling appellant assessor to cancel to zero assessments on said interests for the 1970-1971 taxable years.

1. *The Power of the Board of Supervisors to Sue.*

 . Appellants contend that the board of supervisors is not a legal entity and hence may not bring this action. They cite no authority for this contention. *Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671 [227 P.2d 14], was a proceeding in mandamus in which a writ of mandamus issued compelling the District Attorney of Los Angeles County to bring abatement proceedings. In *Board of Supervisors* v. *Superior Court* (1957) 147 Cal.App.2d 424 [305 P.2d 255], the board of supervisors was granted a writ of prohibition prohibiting the enforcement of a superior court order and other proceedings. In *Board of Supervisors* v. *Cothran* (1948) 84 Cal. App.2d 679 [191 P.2d 506], the board sought a writ of mandamus to compel the county clerk to sign school bonds. In *Board of Supervisors* v. *Superior Court* (1957) 150 Cal.App.2d 618 [310 P.2d 37], the board was granted a writ of prohibition restraining the superior court from certain proceedings. California Government Code section 25303 states: "The

board of supervisors shall supervise the official conduct of all county officers, . . . and particularly those charged with assessing, collecting, safekeeping, management, or disbursement of the public revenues. It shall see that they faithfully perform their duties, . . ." In *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 196-197 [81 Cal.Rptr. 683], the court referred to the duty of the board of supervisors to supervise the official conduct of the assessor, and that it had an active duty to take timely and appropriate action concerning property tax revenues. In *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841 [59 Cal.Rptr. 609, 428 P.2d 593], the board of supervisors joined with the County of Sacramento in mandamus to compel the assessor to comply with a certain section of the Revenue and Taxation Code, and on page 846, footnote 3, the court said: "the county and its board of supervisors have sufficient interest in the matter to be entitled to issuance of the writ." The board of supervisors is a legal entity entitled to bring this proceeding.

### 2. *Mandamus is the Appropriate Remedy.*

Except for a mandamus procedure respondent has no way to enforce its orders. Appellants contend that the individual taxpayers are the only beneficially interested parties, and therefore each one should file his own individual lawsuit. The board of supervisors and the county are also beneficially interested in having the validity of its orders determined. The trial judge pointed out that to decline to issue the writ because of the fact that the possessory interest owners could bring suits at law for the recovery of the taxes paid under protest would be to compel each taxpayer to file a separate suit for refund, necessitating some 69 separate actions, in each of which the same issues would have to be readjudicated, all of which could be avoided and decided in this one proceeding.

A writ of mandate may issue to any board "to compel the performance of an act which the law specifically enjoins . . . ." (Code Civ. Proc., § 1085.) ▮ When an officer dealing with assessments fails to act in accordance with the law, a writ of mandate can issue to compel the officer to comply with the law. (See *State Board of Equalization* v. *Watson* (1968) 68 Cal.2d 307, 310-311 [66 Cal.Rptr. 377, 437 P.2d 761]; *County of Sacramento* v. *Hickman, supra,* 66 Cal.2d 841, 845-846.) ▮ Mandamus will avoid a multiplicity of suits. It is clear that the board of supervisors is a real party of interest and has no other plain, speedy or adequate remedy at law.

### *The Demurrers Were Properly Overruled*

▮ The petition herein also contained causes of action of the con-

cerned taxpayers. One ground of demurrer was misjoinder of parties. Appellants moved to sever the causes of action of the taxpayers; the court ordered them to be severed. Appellants argued that the petition was demurrable because it only identified the tax assessments in question by the assessor's office number, volume and page of the taxpayer's application for refund and did not inform appellants of the dollar amounts of the assessments. This fact did not make the petition vulnerable as the amounts were presumptively within appellants' knowledge. (See *Ching Yee* v. *Dy Foon* (1956) 143 Cal.App.2d 129, 136 [299 P.2d 668].)

### 3. *The Permits and Leases Were Taxable.*

■ To understand the resolutions passed by the board of equalization, it is necessary to consider the proceedings before the board. The assessor had assessed the 68 permits and leases hereinbefore mentioned. Apparently, a few of the permittees and lessees had paid the levied taxes under protest. All 68 had filed written applications to the board of supervisors for a reduction in the assessment of their respective interests. Some 31 applications placed a value upon the holdings, varying from a low of $775 to a high of $11,400. Others placed no value on the holdings. All attacked the validity of the assessment, contending that the interests were not taxable.

The board met as a board of equalization to consider these protests. The assessment roll was not produced nor evidence offered as to the amount of the tax on any interest, nor evidence of what taxes had been paid or not been paid. Apparently, the district attorney informed the board that sitting as a board of equalization it had no authority to pass upon the question of whether the permits or leases were taxable, but only to equalize the taxes.

The assessor stated that the hearing was being conducted under rules 301 to 326 of the California Administrative Code. (These deal with proceedings before the board of equalization.) He further stated that the "purpose of this hearing is to challenge the valuation of Possessory Interest grazing permits made in compliance with rule 126. Rule 126 says: 'The possession of, claim to, or the right to the possession of publicly owned land for grazing livestock or raising forage is a taxable possessory interest.' " The assessor also stated that the real reason of the hearing was "to find the 'right' value for these assessments."

Mr. John Weber, whose testimony before the board was adopted by all the other permittees, testified that the grazing permits were merely licenses and not a possessory interest and not taxable. He also stated that they had no cash value. John Cross, whose testimony was adopted by all the lessees, testified that the leases created no cash value interest.

The board then passed two resolutions. Resolution No. 68-1 deals with the grazing permits. It stated that the board of supervisors met "to hear written protests against the imposition of a possessory interest tax on both grazing permits or licenses on public lands . . . ." It stated that the board had "considered all evidence presented *for and against said possessory interest taxes,* and now finds that the values as determined by the Modoc County Assessor are excessive, and further finds that said grazing permits or licenses on the public land, do not, in fact, have any full cash value." The resolution then orders "the assessment roll reduced on each of the protests filed, to zero for the taxable year 1968-69."

Resolution No. 68-2 deals with the agricultural leases and states that the board of supervisors sitting as a board of equalization has determined, (a) that the United States government is paying Modoc County 25 percent of the net revenue collected by it each fiscal year from the leases "in lieu of taxes on the said parcels, pursuant to Public Law 88-567" (78 Stat. 850); (b) that the California Legislature by chapter 771, Statutes of 1968, has instructed the State Board of Equalization to develop comprehensive rules relating to all types of possessory interests, factors which make such interests subject to taxation, and factors relevant to the valuation of such interests; (c) "[t]he assessment of the said parcels is deemed by this Board to be so incomplete as to render doubtful the collection of the tax, within the meaning of Section 1611, subdivision (c) of the California Revenue and Taxation Code"; (d) "[t]he assessment made of the said parcels is deemed by this Board to be an over assessment as to each such parcel, both with respect to full cash value and as to assessed value, and therefore requires equalization pursuant to Section 1605 of the California Revenue and Taxation Code."

The resolution then states that "for each of the reasons hereinabove cited, considered separately and conjunctively, the full cash value and assessed value of each of the protested parcels are zero."

A study of the proceedings before the board show that although there was evidence that the permits and leases were valueless, despite declarations in the taxpayers' applications that the interests were of value, the board was not equalizing the values but was holding as a matter of law that the permits and leases were not taxable.

 Ordinarily, where the action of an administrative board, such as the board of supervisors, is based upon substantial evidence, the courts may not interfere with that action, and again, ordinarily, the sworn testimony of witnesses constitutes such substantial evidence. But the courts are not and should not be bound by an administrative finding of fact that is obviously a subterfuge for an erroneous finding of law, nor when the

evidence on the face of it is clearly unbelievable. ■ To say that the right to pasture cattle on government land, even though that right is revocable at the government's will and may be required to be exercised with other cattle owners, has no cash value is unbelievable.

■ The court may review findings of an administrative board when arbitrary or against the law. (*Flying Tiger Line, Inc.* v. *County of L.A.* (1958) 51 Cal.2d 314, 322 [333 P.2d 323]; *Glidden Company* v. *County of Alameda* (1970) 5 Cal.App.3d 371, 382 [85 Cal.Rptr. 88]; *County of Amador* v. *State Board of Equalization* (1966) 240 Cal.App.2d 205, 216 [49 Cal.Rptr. 448].)

■ This brings us, then, to the question of whether the board of equalization had the right to determine this question of law, and if it did, whether it properly determined it. The board of equalization's function is to determine as a matter of fact that known property has been equalized. For this purpose it would appear that to make a proper determination, the assessment roll should have been before the board. California Constitution, article XIII, section 9, states that the duty of the board of supervisors sitting as a board of equalization is to equalize the valuation of taxable property in the county for the purpose of taxation. However, when a board of equalization purports to decide a question of law, resort may be had to the courts for determination of that question. (*County of Amador* v. *State Board of Equalization, supra,* p. 216; *A. F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67]; *Flying Tiger Line, Inc.* v. *County of Los Angeles, supra,* p. 322.)

The trial court did not fully review the question of law decided by the board. Instead the court construed the board's action as a mere reassessment based upon the statements of the witnesses that the permits and leases were of no cash value, rather than a decision on a question of law. The court then applied "the substantial evidence rule" and concluded that the rights of the persons assessed were of no value. Although there was no evidence before the board as to who, if anyone, had paid the taxes assessed, the court ordered not only the cancellation of the assessments for the taxable years 1968-1969 and 1969-1970 but to "effect and disburse refunds of taxes collected to the taxpayers and to cancel any delinquent taxes if such tax assessments have not been paid."

As the board purported to decide a question of law, we are now faced with the question of whether the board acted properly in holding, in effect, that the permits and leases were not taxable.

Section 201 of the Revenue and Taxation Code provides: "All property in this State, not exempt under the laws of the United States or of this State, is subject to taxation under this code." Section 103 of the Revenue and

Taxation Code defines property: " 'Property' includes all matters and things, real, personal, and mixed, capable of private ownership." "Possessory interests" in "land or improvements" are taxable under section 107 of the Revenue and Taxation Code in pursuance of the constitutional mandate that " 'all property . . . shall be taxed.' (Const., art. XIII, § 1.) Illustration of this class of taxable estate is found in cases involving possessory interests in property which is tax exempt by virtue of ownership in the federal government (citations)." (*Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 618 [184 P.2d 879].) Quoting from *People* v. *Shearer* (1866) 30 Cal. 645, 655-657, the court in *Kaiser* said at page 618, concerning possession of agricultural claims upon public lands, " 'These possessions, then, are recognized as a *species of property* subsisting in the hands of the citizens. It is not the land itself, nor the title to the land, nor is it the identical estate held by the United States. It is not the preemption right, but is the possession and valuable use of the land subsisting in the citizen. *Why should it not contribute its proper share, according to the value of the interest, whatever it may be, of the taxes necessary to sustain the Government which recognizes and protects it?'* (Italics added.)"

While the grazing permits are temporary and revocable and several permits may be issued by the government to graze cattle on the public lands, and while appellants claim that the federal government remits to the county of the site of the permit 25 percent of the fees collected by the government, nevertheless, the permittees have possession and valuable use of the land that must be deemed sufficient to amount to a possessory interest within the meaning of Revenue and Taxation Code section 107.[1] During the term of the permit and until revocation, the permittees are able to graze their cattle on federal tax-exempt land, and thereby contribute to the growth and profit of their business. The permits can be renewed upon application of the permittees. Although there is a danger that the government could grant more grazing permits for cattle than the grazing land could hold, this is a very remote danger that must not be used to cloud the fact that the permittees are presently enjoying the use of the federal lands for their cattle for the duration of the permit. The permittees should contribute their proper share, according to the value of the interest, for the possession and valuable use of the land. The right of the government to revoke or terminate the permit should be factors to consider in fixing its value. (See *Rand Corp.* v. *County of Los Angeles* (1966) 241 Cal.App.2d 585, 588 [50 Cal.Rptr. 698]; *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610,

---

[1]It is claimed that some of the permits are not granted until after the first Monday in March. If a person did not own a permit on that date, he obviously could not be taxed. In not having the assessment roll before it, the board could not tell which permittees were in that category. On reconsideration the board can eliminate assessments against individuals who had not received permits prior to that date.

619.) As said in *Mattson* v. *County of Contra Costa* (1968) 258 Cal.App. 2d 205, 209 [65 Cal.Rptr. 646], concerning the agreement there which the court held to grant a taxable possessory interest, "there are some features of relative durability, independence, exclusiveness and fixedness, and others of relative impermanence, subjection to control and public participation . . . a substantial balance of the factors is on the side of possessory interest."

The United States Code which provides for the issuance of grazing permits states that the issuance of such a permit "shall not create any right, title, interest, or estate in or to the lands." (43 U.S.C. § 315b.) This restriction, however, in nowise affects the right of the state to determine that the permittee has acquired a taxable possessory interest. Likewise, the fact that the permits and leases create no property right that can be asserted for purposes of compensation when the permit is withdrawn does not lead to the conclusion that such permits and leases do not create possessory interests in the federal lands.

In *Sproul* v. *Gilbert* (1961) 226 Ore. 392 [359 P.2d 543], the court held that a grazing lease under the Taylor Grazing Act created a possessory interest in the lessee. In dicta it stated that a grazing permit was merely a license which was not exclusive. The court was not called upon to consider the facts as noted above, namely, that the permittees do in fact possess the federal land for the duration of the term of their permit, use the land to graze their cattle, and thereby increase the profits of their business. Only revocation of the permit by the government can terminate the grazing. This valuable use and possession of federal tax-exempt land should be deemed sufficient to amount to a possessory interest within the meaning of Revenue and Taxation Code section 107. The lower court therefore erred in not giving this determination its proper consideration.

While, of course, administrative codes and interpretations are only binding if valid and not contrary to existing law, it is of some significance that the hereinabove mentioned sections of the California Administrative Code have been adopted, particularly in the light of the views herein expressed.

California Administrative Code, title 18, section 21, pages 4.6.2 and 4.7 defines "possessory interest" as an interest in real property "which exists as a result of possession, exclusive use, or a right to possession or exclusive use of land . . . unaccompanied by the ownership of a fee simple or life estate in the property." It may exist as the result of a grant, among others, "of a leasehold estate, a profit a prendre, or any other legal or equitable interest of less than freehold . . . , provided the grant con-

fers a right of possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property." "Exclusive use" is not destroyed by "[c]oncurrent use when the extent of each party's use is limited by the other party's right to use the property at the same time, as, for example, when two or more parties each have the independent right to graze cattle on the same land."

"A possessory interest may be a leasehold interest or the interest of either an easement holder or a mere permittee or licensee. . . .

". . . Due to the fact that about half the land in California is in the public domain, the taxation of possessory interests in the State is a significant revenue item . . . ." (Kenneth A. Ehrmann, Sean Flavin, Taxing California Property, § 50, p. 60.)

As to the leases, the board classified them in the category of not being taxable.

Resolution No. 68-2, dealing with the agricultural leases issued by the Bureau of Reclamation, states that the assessments are so incomplete as to render collection of the tax doubtful within the meaning of Revenue and Taxation Code section 1611, subdivision (c).

Section 1611 of the Revenue and Taxation Code provides that the county board of equalization may "direct the assessor to: . . . (c) Make and enter new assessments, at the same time canceling previous entries, when any assessment made by him is deemed by the county board so incomplete as to render doubtful the collection of the tax." The board instead of directing that a new assessment be made, thus complying with section 1611, subdivision (c), found the assessment "to be an over assessment as to each such parcel." As the assessment was incomplete, it is difficult to understand how the board would find that it was over assessed. The board stated that the United States government is currently paying Modoc County 25 percent of the net revenues collected from the leasing, "*in lieu of taxes* on the said parcels, pursuant to Public Law 88-567, approved September 2, 1964, 78 Stat. 850." (Italics added.) The board was mistaken in its interpretation of said law. There is nothing in that or any law stating that the payments to counties involved are "in lieu of taxes."

It is clear from the reference to this law in the board's resolution that the board, as in the case of the grazing permits, erroneously believed that the leasehold interests were not taxable. Particularly is this so as the record reveals that at the hearing before the board one of the witnesses stated that he believed that an in lieu tax existed. Actually, there was no evidence before the board to show that any relation in value existed between 25 per-

cent of the revenue collected from the lands listed and the assessed value of the leases.

There is no question that a lease of tax exempt land for grazing and agricultural purposes is taxable as a possessory interest. (See *McCaslin* v. *DeCamp* (1967) 248 Cal.App.2d 13, 16 [56 Cal.Rptr. 42]; *El Tejon Cattle Co.* v. *County of San Diego, supra*, 64 Cal.2d 428, 429 [50 Cal. Rptr. 546, 413 P.2d 146]; *County of Amador* v. *State Board of Equalization*, 240 Cal.App.2d 205, 217 [49 Cal.Rptr. 448].)

In *U.S.* v. *Certain Parcels of Land in San Bernardino Co.* (C.D.Cal. 1969) 296 F.Supp. 774, the court held that grazing leases issued under the Taylor Grazing Act are property and holders thereof had a compensable interest in condemnation proceedings.

The superior court was in error in upholding petitioner's resolutions. The writ of mandate should not have issued.

The judgment granting peremptory writ of mandate is reversed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied August 12, 1971, and respondent's petition for a hearing by the Supreme Court was denied September 8, 1971.