[Civ. No. 30759. First Dist., Div. Two. Jan. 22, 1974.]

SEA-LAND SERVICE, INC., Plaintiff and Respondent, v.
COUNTY OF ALAMEDA et al., Defendants and Appellants.

## COUNSEL

Richard J. Moore, County Counsel, and Joseph P. Bingaman, Deputy County Counsel, for Defendants and Appellants.

Graham & James, Francis L. Tetreault and Paul A. Dezusick for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—The County of Alameda (County) and City of Oakland (City) appeal from a judgment concluding that the taxpayer, respondent, Sea-Land Service, Inc. (Sea-Land), did not acquire a taxable possessory interest under its "Preferential Assignment Agreement," and directing the refund of 1967-68 personal property taxes levied and collected by the City for the County. As we have concluded that the agreement created a taxable possessory interest, the judgment must be reversed and remanded for a

determination of whether the effective term of the agreement for purposes of property tax assessment is 5 years or 20 years.

The facts are as follows: On February 5, 1965, Sea-Land's predecessor entered into a "Preferential Assignment Agreement" with the City for use of marine terminals, including Berths 8 and 9, owned by the City. The agreement became effective on January 10, 1966, on approval by the Federal Maritime Commission, for a 20-year term commencing April 1, 1966. As of the 1967 and 1968 lien dates, Sea-Land was also the lessee of adjoining premises, including an office building and truck station, from the port, under another 20-year agreement. All of the real property assigned to Sea-Land under the agreement was deeded to the City by the State pursuant to the Tidelands Act. The compensation for Sea-Land's use of the premises is governed by a port tariff that can be redetermined by the port at five-year intervals. Sea-Land's compensation to the port under the agreement is limited for any 12-month period to a minimum of $450,000 and a maximum of $550,000. During the tax years here in issue, 1967 and 1968, the maximum was exceeded by Sea-Land's charges to its customers, whose cargo it carried.

In 1967, Sea-Land filed a timely application for reduction in assessment contesting the right of the assessor to assess a possessory interest or, in the alternative, the value assigned by the assessor to Sea-Land's possessory interest.

On January 15, 1968, the county assessment appeals board met as a county board of equalization, and after considering Sea-Land's petition, reduced the assessment and established the fair market value of Sea-Land's interest at $2,056,600, yielding an assessed value of $514,150, and a tax of $60,566.87. The reduction was based upon the use of a 17-year term in calculating the fee value and the possessory interest, together with an allowance of 25 percent (rather than the original allowance of 20 percent) from the fee value, used by the assessor in consideration of the port's ability to redetermine the rental to be charged at each five-year interval.

Sea-Land timely filed its complaints for recovery of taxes paid under protest and for reduction in assessment. On January 20, 1969, the County board of equalization heard and rejected Sea-Land's petition for reduction in assessment and affirmed the assessor's use of the longer term of occupancy less an allowance of 25 percent from the fee value, for various restrictions, including the ability of the Port of Oakland to review and adjust the rental to be charged to Sea-Land at each five-year interval. The board ordered a refund in taxes based upon the application of a ratio of

assessed value to full cash value of 24.84 percent rather than the ratio of assessed value to full cash value of 25 percent, used by the assessor.

This action ensued and the trial court entered its judgment in favor of Sea-Land. The trial court set forth its reasoning in a succinct memorandum opinion, dated April 6, 1971, as follows: "The first issue raised by plaintiff is that it does not have a taxable possessory interest in the premises described in the Preferential Assignment Agreement. If this contention is sound, as a matter of law, the second issue relating to the term of the assignment of use need not be decided in this case.

"The assignment agreement recites that it is:

"1. 'a non-exclusive preferential assignment to use' the described premises.

"2. 'for the receiving and delivery of freight in assignee's vehicles prior or subsequent to the loading and discharging of Sea-Land vessels and for assignee's operations incidental thereto, including parking of assignee's vehicles while awaiting shipment, and (assignee) shall not use the premises for any other purpose without prior written consent of the Port.'

"3. 'The Port reserves the right . . . to use all or any part of the areas and properties . . . for the berthing of vessels and loading or discharging of cargoes and operations incidental thereto, *provided, only,* that *such use* by the Port *shall not unreasonably interfere* with the operations of assignee as herein authorized. In the event of any such secondary use by the Port, *all . . . charges . . . shall accrue to* and *be billed by the Port.'* "

"It is the conclusion of the Court that the agreement in question falls far short of a taxable possessory interest under pertinent definitions and authorities. *It does not provide for 'exclusive possession of the premises* against all the world, including the owner,' as prescribed in *Kaiser Co.* v. *Reid,* 30 C.2d 610, 619, quoting from *Von Goerlitz vs. Turner,* 6 Cal.App. 2d 425, 429." (Italics added.)

 The trial court did not then have the benefit of *Board of Supervisors* v. *Archer,* 18 Cal.App.3d 717 [96 Cal.Rptr. 379] (decided July 1971, hg. den. Sept. 8, 1971), relating to the substantially similar question of a taxpayer's possessory interest in the right to pasture cattle on government land. Justice Bray's language and reasoning (at pp. 724-725) is totally apt here. "As the board purported to decide a question of law, we are now faced with the question of whether the board acted properly in holding, in effect, that the permits and leases were not taxable.

"Section 201 of the Revenue and Taxation Code provides: 'All property

in this State, not exempt under the laws of the United States or of this State, is subject to taxation under this code.' Section 103 of the Revenue and Taxation Code defines property: ' "Property" includes all matters and things, real, personal, and mixed, capable of private ownership.' 'Possessory interests' in 'land or improvements' are taxable under *section 107 of the Revenue and Taxation Code* in pursuance of the constitutional mandate that ' "all property . . . shall be taxed." (Const., art. XIII, § 1.) Illustration of this class of taxable estate is found in cases involving possessory interests in property which is tax exempt by virtue of ownership in the federal government (citations).' (*Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 618 [184 P.2d 879].) Quoting from *People* v. *Shearer* (1866) 30 Cal. 645, 655-657, the court in *Kaiser* said at page 618, concerning possession of agricultural claims upon public lands, ' "These possessions, then, are recognized as a *species of property* subsisting in the hands of the citizens. It is not the land itself, nor the title to the land, nor is it the identical estate held by the United States. It is not the preemption right, but is the possession and valuable use of the land subsisting in the citizen. *Why should it not contribute its proper share, according to the value of the interest, whatever it may be, of the taxes necessary to sustain the Government which recognizes and protects it?"* . . .' (Italics partially added.)

"While the grazing permits are temporary and revocable and several permits may be issued by the government to graze cattle on the public lands, and while appellants claim that the federal government remits to the county of the site of the permit 25 percent of the fees collected by the government, nevertheless, the permittees have possession and valuable use of the land that must be deemed sufficient to amount to a possessory interest within the meaning of Revenue and Taxation Code section 107. During the term of the permit and until revocation, the permittees are able to graze their cattle on federal tax-exempt land, and thereby contribute to the growth and profit of their business. The permits can be renewed upon application of the permittees. Although there is a danger that the government could grant more grazing permits for cattle than the grazing land could hold, this is a very remote danger that must not be used to cloud the fact that the permittees are presently enjoying the use of the federal lands for their cattle for the duration of the permit. The permittees should contribute their proper share, according to the value of the interest, for the possession and valuable use of the land. The right of the government to revoke or terminate the permit should be factors to consider in fixing its value. (See *Rand Corp.* v. *County of Los Angeles* (1966) 241 Cal.App.2d 585, 588 [50 Cal.Rptr. 698]; *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 619.)"

Thus, the trial court's conclusion that the agreement of the parties does not provide for "exclusive possession of the premises against all the world, including the owner," as prescribed in *Kaiser Co.* v. *Reid, supra,* is not supported by *Archer, supra.* Here, Sea-Land has exclusive possession against all the world, including the owner, whenever Sea-Land has a "business need" for the property. The port's reservation to use the area for berthing, loading and unloading when "such use does not unreasonably interfere with the operations" of Sea-Land does not authorize the port to use the premises when Sea-Land has a "business need" therefor. Sea-Land not only had actual possession of the premises but it continuously used and had a business need to use all of the premises. Thus, Sea-Land had a right to exclusive possession against all, including the port, whenever Sea-Land had a business need for it; only in the absence of Sea-Land's "business need" can the port temporarily assign the premises to other persons.

Sea-Land attempts to distinguish *Archer, supra,* and similar authorities on grounds of the short term nature of the grazing rights. As this court (Division Four) noted in *Mattson* v. *County of Contra Costa,* 258 Cal. App.2d 205, at page 209 [65 Cal.Rptr. 646]: "In arrangements of the general nature of the one before us, to which a unit of government is a party, almost inevitably there are some features of relative durability, independence, exclusiveness and fixedness, and others of relative impermanence, subjection to control and public participation. In each case, judgment must be made by examination of the agreement in its entirety."

Although the agreement is entitled "Preferential Assignment Agreement," and contains language that it does not create an interest in land and that the interest conveyed is a "nonexclusive preferential assignment," these designations are not controlling (*Beckett* v. *City of Paris Dry Goods Co.,* 14 Cal.2d 633 [96 P.2d 122]; *Mattson* v. *County of Contra Costa, supra.*

When the entire agreement is analyzed, it can clearly be seen that it is comparable to a lease: the term is 20 years; the premises are clearly described; the permitted use is set forth with clarity; the compensation for such use is clearly stated; Sea-Land is required to keep the premises neat, clean and orderly and is wholly responsible for repairs and maintenance; and the fire insurance names Sea-Land as a coinsured, etc.

With reference to the term of the agreement, we note that the Port of Oakland's Tariff No. 2 defines wharf assignments, as follows: "A preferential wharf assignment gives the assignee the right to preferential nonexclusive use of a certain berth, or area or facility as designated in the assignment application, and on a *month-to-month* basis." (Italics added.)

Such a definition in its own tariffs is clearly inconsistent with the definition used by the port in the instant agreement. Also, the 20-year term is compatible with Sea-Land's lease of adjacent land used for related activities. Finally, Sea-Land derives a specific economic benefit from its agreement with the port, Paragraph 4 of the agreement sets forth a minimum and maximum charge, and Sea-Land has stipulated that in each of the years in question, Sea-Land has exceeded the maximum (set forth in par. 4, as amended by the second supplemental agreement) and *thus has obtained free use of the premises which no other user of the port facilities can obtain.*

As further noted in *Board of Supervisors* v. *Archer,* 18 Cal.App.3d 717, at pages 726 and 727 [96 Cal.Rptr. 379]: "California Administrative Code, title 18, section 21, pages 4.6.2 and 4.7 defines 'possessory interest' as an interest in real property 'which exists as a result of possession, exclusive use, or a right to possession or exclusive use of land . . . unaccompanied by the ownership of a fee simple or life estate in the property.' It may exist as the result of a grant, among others, 'of a leasehold estate, a profit a prendre, or any other legal or equitable interest of less than freehold . . ., provided the grant confers a right of possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property.' 'Exclusive use' is not destroyed by '[c]oncurrent use when the extent of each party's use is limited by the other party's right to use the property at the same time, as, for example, when two or more parties each have the independent right to graze cattle on the same land.'

" 'A possessory interest may be a leasehold interest or the interest of either an easement holder or a mere permittee or licensee . . . .

" '. . . Due to the fact that about half the land in California is in the public domain, the taxation of possessory interests in the State is a significant revenue item . . . .' (Kenneth A. Ehrmann, Sean Flavin, Taxing California Property, § 50, p. 60.)"

Nor does the fact that the use permitted to Sea-Land is restricted solely to the loading and unloading of cargo vessels and uses incidental thereto so severely limit Sea-Land's right to possession as to cause its right to be other than a possessory interest. In *El Tejon Cattle Co.* v. *County of San Diego,* 64 Cal.2d 428, 429 [50 Cal.Rptr. 546, 413 P.2d 146], recognizing the restrictive nature of El Tejon Cattle Company's interest as a possessory interest, our Supreme Court stated: "The lease imposes various restrictions on plaintiff, including limiting plaintiff's use to the 'grazing by cattle of native or cultivated forage crops, including all annual or perennial plants or shrubs, and for the supplemental or finished feeding of cattle.' The fee

owner (district) reserved the right to export water from the land, and other tenants had been granted the hunting and other recreational concessions."

As recently noted in *Georgia Pacific Corporation* v. *County of Mendocino* (N.D.Cal. 1972) 340 F.Supp. 1061, at page 1067: "Although it is not entirely clear, *El Tejon* would seem to stand for the proposition that an interest in real property is taxable as 'possessory' so long as the holder of the interest is protected from interference by other users. . . . The fact that many restrictions may have been imposed governing the manner in which these valuable lands are used does not compel a conclusion that the interest granted is not a substantial and valuable one."

Sea-Land further contends that the rights in the public, conferred by the Tidelands Acts permtting the public access over the demised premises to fish in all waters adjacent thereto and the right of the State of California to use said premises for any vessel or other watercraft owned or operated by the state causes its use to be nonexclusive. In *Mattson* v. *County of Contra Costa, supra,* at page 210, this court (Division Four) disposed of this contention as follows: "We conclude, considering the nature of the enterprise, that, despite the freedom of the public to enter, the city has given to respondents an exclusiveness of possession, even against the city itself, to constitute a substantial interest." Here, any use of the premises for fishing would not be incompatible with Sea-Land's use and can be likened to the granting of hunting rights and other recreational concessions by the Vista Irrigation District to third parties in *El Tejon Cattle Co.* v. *County of San Diego, supra.* Further, the use by the state for the berthing of ships owned by the state can be compared to the use of the dining room by golfers in *Mattson, supra.*

We conclude that Sea-Land's interest under the agreement with the port is taxable as a possessory interest. Accordingly, the judgment must be reversed and remanded to the trial court for a determination of the issue of effective term of the agreement for purposes of tax assessment.

The judgment is reversed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied February 21, 1974, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied March 20, 1974.