[Civ. No. 4668. Fifth Dist. Dec. 4, 1981.]

WILLIAM C. FREEMAN, Plaintiff and Respondent, v.
COUNTY OF FRESNO et al., Defendants and Appellants.

COUNSEL

Floyd R. B. Viau, County Counsel, and Charles E. Moore, Deputy County Counsel, for Defendants and Appellants.

Mark D. Johnson and Thomas A. Castelazo for Plaintiff and Respondent.

OPINION

WOOLPERT (W. R.), J.*—The County of Fresno appeals from a judgment ordering it to repay $493.32 in taxes paid by respondent under protest. Our question concerns the right of the county and city to assess

---

*Assigned by the Chairperson of the Judicial Council.

and collect taxes against the owner of amusement machines placed for a private profit in public facilities including an airport terminal. The claimed basis for such a tax is that the owner's agreed right of access and use of tax exempt public property creates a taxable "possessory interest" in the private user.

We will not set forth the facts or law at any length as this taxation question has been before the courts on many occasions involving more substantial private uses of public property.[1] The distinguishing feature of this case is that the private use of public property is merely the mini-

---

[1]Listed below, in chronological order, are recent Court of Appeal decisions that considered the issue of taxable possessory interests. Despite a variety of factual circeumstances, all of these cases ultimately found a taxable possessory interest. Some of these cases are examined in the text of this opinion.

*Rand Corp.* v. *County of Los Angeles* (1966) 241 Cal.App.2d 585 [50 Cal.Rptr. 698] (nonprofit corporations subject to possessory interest tax); *McCaslin* v. *DeCamp* (1967) 248 Cal.App.2d 13 [56 Cal.Rptr. 42] (residence provided to employee by tax exempt irrigation district held to be possessory interest); *Mattson* v. *County of Contra Costa* (1968) 258 Cal.App.2d 205 [65 Cal.Rptr. 646] (refreshment service and clubhouse at municipal golf course held to be possessory interest); *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717 [96 Cal.Rptr. 379] (federal grazing permits held to be a. possessory interest despite being nonexclusive, temporary and revocable; *Archer* relied in part on the earlier Supreme Court decision of *El Tejon Cattle Co.* v. *County of San Diego* (1966) 64 Cal.2d 428 [50 Cal.Rptr. 546, 413 P.2d 146]); *Sea-Land Service, Inc.* v. *County of Alameda* (1974) 36 Cal.App.3d 837 [112 Cal.Rptr. 113] (preferred right [though nonexlusive] to use city port facilities for sole purpose of receiving and delivering freight held to be possessory interest); *United States of America* v. *County of Fresno* (1975) 50 Cal.App.3d 633 [123 Cal.Rptr. 548] (forest rangers residing in federally owned housing incident to employment held to have possessory interests; in *United States* v. *County of Fresno* (1977) 429 U.S. 452, 464-467 [50 L.Ed.2d 683, 693-695, 97 S.Ct. 699], the United States Supreme Court held such taxation to be constitutional since it did not discriminate, the federal government was not being taxed directly, and it was not forbidden by Congress); *Wells Nat. Service Corp.* v. *County of Santa Clara* (1976) 54 Cal.App.3d 579 [126 Cal.Rptr. 715] (exclusive right to rent television sets to patients in a tax exempt hospital held to be possessory interest); *Stadium Concessions, Inc.* v. *City of Los Angeles* (1976) 60 Cal.App.3d 215 [131 Cal.Rptr. 442] (the sole concessionaire in a sports arena and coliseum operating under control of a city-county commission held to have possessory interest); *Lucas* v. *County of Monterey* (1977) 65 Cal.App.3d 947 [135 Cal.Rptr. 707] (preferred right to dock boat in harbor berth at a public harbor held to be possessory interest; when boat was absent, harbor could rent space to others).

*United States* v. *County of Humboldt, Cal.* (9th Cir. 1980) 628 F.2d 549, the only recent case not finding a taxable possessory interest involved an attempt to tax navy and air force quarters provided by the United States government. The Ninth Circuit held there was no private benefit to the service personnel because the IRS excludes occupation of such dwellings from gross income. The court further held that such taxation placed an impermissible burden on a federal function because it might create military recruiting disincentives and moral problems generated by disparate state administration of possessory interest taxation. (See Comment, *State Taxation of Military Housing: A Possessory Interesting Question* (1981) 13 Pacific L.J. 207.)

mum space required for the presence of amusement machines as compared to the use of rooms, pasture land, docks and piers and other larger physical areas.

The parties entered into written agreements which permitted respondent to place amusement machines in unspecified areas of the public facilities including an airport terminal, subject to certain limitations. Administrative approval was needed as to the precise locations and the type and number of machines. No assurance was provided that competing businesses would not be given similar opportunities. Controls were spelled out as to inspection, maintenance, insurance, and the collection and accounting of the proceeds. The receipts were shared by the parties with respondent receiving either 50 or 75 percent.

The original contract was entered into in 1965 and supplemented in 1975 prior to the time the tax was imposed. Both agreements contained a 10-day cancellation clause. Assignment was not prohibited. The evidence disclosed no history of conflicts in the administration of the contract or with competitors. The assessment was not made until receipts increased. However, the assessor indicated this was because of valuation rather than a conclusion that there was no possessory interest.

In our review of the law, we have been considerably aided by the trial court's 16-page notice of intended decision in which the facts were set forth in more detail than here and the law carefully outlined in its historical development over many years.[2] We differ with the trial court only in the final conclusion. Revenue and Taxation Code section 107, in pertinent part, defines possessory interest as follows: "'Possessory interests' means the following:

"(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person."

The concept of a taxable possessory interest originated for sound public policy reasons. With much of California land either federal or state owned and therefore not subject to direct taxation, a method for taxing persons who used that land for their own benefit was created to gener-

---

[2]An elaborate law review analysis of the development of the case law from 1859 to 1977 is provided in Comment, *The California Possessory Interest Tax: A Time Honored Concept Gets a New Twist* (1977) 17 Santa Clara L.Rev. 827.

ate necessary revenue. The California Supreme Court in *State of California* v. *Moore* (1859) 12 Cal. 56, held that residents using federal land for mining and farming purposes could be taxed because they had a possessory interest. This analysis was expanded to California state-owned land in *San Pedro etc. R. R. Co.* v. *Los Angeles* (1919) 180 Cal. 18 [179 P. 393].

Because these earlier cases did not define how to determine what a possessory interest was, the Supreme Court addressed this issue in 1947 in *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610 [184 P.2d 879]. The *Kaiser* court outlined three essential elements for determining if a possessory interest existed. The agreement had to confer use and possession (1) for a reasonably certain determinable period, (2) which was exclusive against all the world, including the rightful owner, and (3) which generated a valuable private benefit. In *Kaiser* that benefit was the ability to earn a profit. The agreement between Kaiser Company and the federal government granted Kaiser the rent free, exclusive use and possession of federally owned shipyards in Richmond, California.

The *Kaiser* court drew a distinction between a lease which was a possessory interest, and a license which was not. The elemental approach of the *Kaiser* rule, making the distinction between a lease and a license, offered some degree of structure and certainty to the application of the rule but it also restricted a fluid application of the tax.

In more recent times the three *Kaiser* requirements have been applied in a less demanding way so as to find a taxable interest in most cases in which the private use of public property has been special to the person concerned and valuable. Whether it was a ranger's use of a federally owned residence, the berthing of a commercial boat at a public wharf, or the exclusive right to provide television sets to patients at a hospital, the focus has been on the belief that the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity.

The protax trend has found courts testing the requirement of a reasonably certain period of enjoyment by an examination of the agreement as stated in writing *and* the history of the relationship of the parties, thereby finding durability because of the passage of time even though the agreement may have been cancelable at the will of the parties. The requirement that the use must be exclusive means that it must

not be one shared by the general public and, at least until cancelled, must be enforceable against the public entity which permits the use. As previously indicated, the valuable private benefit may be income, or merely a place to live incident to employment.

In a case in which forest rangers contended that their use of housing provided by the forest service was a condition of employment and should not be taxed, this court found a valuable private purpose and a taxable interest even though rents were charged and the housing could be changed from place to place or terminated at any time. The approach of the court to this issue was as follows: "To give rise to a taxable possessory interest, the right of possession or occupancy must be more than a naked possession or use; it must carry with it, either by express agreement or tacit understanding of the parties, the degree of *exclusiveness* necessary to give the occupier or user something more than a right in common with others, or, in the case of employment, something more than the means for performing his employer's purpose, so that it can be said, realistically, that the occupancy or use substantially subserves an independent, private interest of the user or occupier. [Citations.]" (*United States of America* v. *County of Fresno, supra*, 50 Cal.App.3d 633, 638.)

■ In the case at bench, the trial court found that the facts supported a finding of durability. However, the element of exclusiveness was found lacking. We disagree. Respondent had more than a mere right shared with the general public. Respondent's position was not akin to "a street artist on Telegraph Avenue." Instead, there was a special right of access for profit which was not shared in common by all who entered the airport terminal. Though we recognize the small size and variable location of the space occupied by each machine, this space was not by its size or movement about the premises made unvaluable to the owner of the machines.

We do not find that the possibility of competition in itself precludes the finding of a possessory interest. Though it may affect valuation, respondent's use was secured by a contractual right and it was exclusive against the world, except for a few others who might acquire similar rights. We must assume that the financial motives and strict controls imposed in this case by the public entity assured that the use was a protected one. The relationship of the parties during the long period of use was properly considered in reaching the conclusion that there was a taxable possessory interest.

We do not find that independence from public control is a key to taxability. The nature of the equipment concerned is such that both parties should be concerned with location, access, visibility, maintenance, public safety, and the ultimate purpose of profit. That the public agency may appear to have the right to dictate conditions which may reduce profits goes to the question of valuation, not to whether the use is or is not exclusive.

Our review has been based upon the facts generally accepted to be true by the trial court and the same agreements interpreted by that court. Credibility of witnesses is not a question. We have therefore come to an independent determination of the meaning of the agreements and apply the facts to the law as we interpret it.

The judgment is reversed.

Andreen, Acting P. J., and Baca, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.