[No. A055024. First Dist., Div. One. Dec. 11, 1992.]

EURO-PACIFIC, Plaintiff and Appellant, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

COUNSEL

Graham & James, David Colker, Diane L. Gibson and Rosemary Boccio for Plaintiff and Appellant.

Kelvin H. Booty, Jr., County Counsel, and James F. May, Assistant County Counsel, for Defendants and Respondents.

OPINION

STEIN, J.—Euro-Pacific, a foreign joint venture, appeals from the decision of the superior court that it enjoys a taxable, possessory interest in a public container terminal (hereafter, the Facility) owned and operated by the Port of Oakland. We will affirm.

## BACKGROUND

Alameda County's Port of Oakland operates a number of shipping container terminals. These maritime terminal facilities include berthing areas, gantry cranes used to load or discharge cargo containers from vessels, and storage areas to store cargo containers while waiting to be loaded aboard vessels or overland transportation. Some of the terminal facilities are assigned or leased to individual shipping companies. Others, such as the Facility, are "public container facilities" and subject to use by any commercial shipping vessel. The Facility contains approximately fifty-three acres, four berths and three container cranes.

Euro-Pacific is a joint venture owning and operating containership vessels. In 1974, and again in 1976, Euro-Pacific entered into several agreements by which it established its right to use the Facility for purposes of loading and discharging cargo. The 1976 agreement has remained in effect to the present time. By it, Euro-Pacific agreed to pay specified wharfage and dockage fees to the Port of Oakland in return for which the Port of Oakland agreed to furnish stevedoring and related services,[1] to furnish "ample space" for the storage of Euro-Pacific's "outbound and inbound cargo, containers

---

[1]These services were performed by Marine Terminals Corporation under contract with the Port of Oakland.

and empty container and chassis stock as required for the vessel's efficient operation," and, as is specifically relevant here, agreed that Euro-Pacific's "vessels shall be allocated a berth, container gantry crane and equipment as required for the operation *strictly in accordance with arrival priority.* [Euro-Pacific] agrees to vacate the berth when idle and in conflict with another vessel." (Italics added.) Other container shippers were similarly entitled. In other words, Euro-Pacific and other users were given the contractual right to use the Facility for loading, discharging and storage purposes. As between these users, berths were available on a first-come, first-served basis; Euro-Pacific had no right to use one of the available berths if other vessels were then using them, had no right to move ahead of other waiting users, and was required to vacate a berth if another user needed it and Euro-Pacific's vessel was idle.[2]

Alameda County took the position that Euro-Pacific's contractual right to use the Facility established a possessory, taxable, interest in the Facility. Euro-Pacific paid the taxes Alameda County assessed against it, but brought this action seeking a refund. On each party's motion for summary adjudication, the superior court determined that, indeed, Euro-Pacific enjoyed a possessory, and thus taxable, interest in the Facility. The parties thereafter stipulated that this adjudication disposed of the first cause of action stated in Euro-Pacific's complaint. Euro-Pacific dismissed its other causes of action,[3] and judgment was entered in favor of the County of Alameda.

## DISCUSSION

California Revenue and Taxation Code sections 104, 107 and 201 provide that possessory interests in real property are taxable. A possessory interest is defined, as relevant here, as the "Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person." (Rev. & Tax. Code, § 107, subd. (a).) ■ There is no question but that a vessel owner's use of publicly owned maritime facilities may be such a possessory interest. Any arguments to the contrary were settled by the decisions in *Sea-Land Service, Inc.* v. *County of Alameda* (1974) 36 Cal.App.3d 837, 844 [112 Cal.Rptr. 113], and again in *Seatrain Terminals of California, Inc.* v. *County of Alameda* (1978) 83 Cal.App.3d 69, 80-81 [147 Cal.Rptr. 578].

---

[2]The parties dispute whether Euro-Pacific ever had to wait for a berth or whether the "arrival priority system" otherwise had an adverse effect on Euro-Pacific (i.e., in having to schedule its arrivals, etc.). In our opinion, however, the dispositive question is not whether Euro-Pacific was ever required to wait for a berth, but whether the fact that Euro-Pacific *might* have to wait rendered its interest nontaxable.

[3]Euro-Pacific had also attacked the constitutionality of the tax, Alameda County's assessment of taxes based on wharfage charges, the constitutionality of that assessment, and the valuation of its taxable interest.

Euro-Pacific, however, correctly points out that it is not enough that a party have the right to use a facility; for it to have a possessory interest in that facility, its right of use must in some sense be exclusive. Thus, title 18, section 21, of the California Code of Regulations provides a more detailed definition of a taxable, "possessory interest":

"(a) 'Possessory interest' means an interest in real property which exists as a result of *possession, exclusive use, or a right to possession or exclusive use* of land and/or improvements unaccompanied by the ownership of a fee simple or life estate in the property. Such an interest may exist as a result of:

"(1)  A . . . legal or equitable interest of less than freehold, regardless of how the interest is identified in the document by which it was created, provided the grant confers a right of *possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property.*" (Italics added.)

"Possession" is then defined as "Actual possession, constituting the occupation of land or improvements with the intent of *excluding any occupation by others that interferes with the possessor's rights,* . . ." (Cal. Code Regs., tit. 18, § 21, subd. (c)(1); italics added.)

■    Here, Euro-Pacific has no right to exclude other, similarly situated container shippers from using the Facility. Further, Euro-Pacific can be required to wait in line in order to use the Facility, and it can be compelled to vacate the Facility if it is idle and another container shipper needs to use a berth. Euro-Pacific strenuously argues that these restrictions on its right of use render that right nonexclusive, and thus nonpossessory and nontaxable. We disagree.

■    As it is settled that the right to use a publicly owned facility may be a possessory interest, it is also settled that such a use is not rendered nonexclusive by the fact that others enjoy a similar right. In *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717 [96 Cal.Rptr. 379], taxpayers protested the assessment of taxes on grazing permits. It was held that the right to pasture cattle on public land is a possessory, taxable (and thus "exclusive") interest, notwithstanding that others also have been issued grazing permits entitling them to pasture their own cattle on the same property. The court, citing Ehrmann & Flavin, Taxing California Property, section 50, page 60, held: " 'Exclusive use' is not destroyed by '[c]oncurrent use when the extent of each party's use is limited by the other party's right to use the property at the same time, as, for example, when two or more parties each have the independent right to graze cattle on the same land.

■ A possessory interest may be a leasehold interest or the interest of either an easement holder or a mere permittee or licensee. . . .' " (*Board of Supervisors* v. *Archer, supra*, 18 Cal.App.3d at p. 727.)

The courts in *Sea-Land* and *Seatrain* agreed, finding that the taxpayers in those cases enjoyed possessory interests notwithstanding that in granting the interests, the public entities reserved the right to use the property to themselves or their designees. (36 Cal.App.3d at pp. 840, 842; 83 Cal.App.3d at p. 81.) Euro-Pacific points out, however, that in *Sea-Land* and *Seatrain* the agreements provided that the rights of the taxpayer were primary and those of the public entity secondary. Thus, the agreements provided that the public entity or its designees could not "unreasonably interfere" with the taxpayers' operations. Moreover, the public entity could lease the same premises to another only temporarily, and only if the taxpayer had no business need for them. In the present case, the right of others to use the Facility may indeed interfere with Euro-Pacific's operations in that Euro-Pacific may have to wait in line for a berth or may be required to vacate a berth if some other user needs it. In addition, others have a right to use the same premises regardless of Euro-Pacific's business needs. Accordingly, Euro-Pacific's possessory rights are not primary, but concurrent with those of other users.

In *Archer*, however, as in the present case, others were given a concurrent right to use the premises regardless of the taxpayer's business needs. Similarly, in *Scott-Free River Expeditions, Inc.* v. *County of El Dorado* (1988) 203 Cal.App.3d 896 [250 Cal.Rptr. 504], companies were given permits to run commercial river rafting expeditions down the South Fork of the American River. These companies shared the right to use the river not only with one another, but with any private individual who chose to use the river for his or her own recreation. Euro-Pacific attempts to distinguish these cases, noting that there was no showing of actual interference with the taxpayer's usage in either. Indeed, in *Archer*, the court noted that the likelihood of future interference was "very remote." Euro-Pacific similarly seeks to distinguish other cases, which also found that a taxpayer had a taxable possessory interest in property on the basis of some right to use publicly owned real property. In *Freeman* v. *County of Fresno* (1981) 126 Cal.App.3d 459 [178 Cal.Rptr. 764], for example, a taxpayer's contractual right to place amusement machines in a public airport was deemed to be exclusive although others were entitled to a similar use. The court emphasized the fact that the right to use the space occupied by each machine was valuable. (*Id.* at p. 464.) Euro-Pacific emphasizes that there was no showing that once the machines occupied a given space, others were entitled to move them or otherwise interfere with the taxpayer's use of that space. It was enough that the taxpayer had leased space which could not be invaded by others. Thus,

Euro-Pacific essentially argues that "exclusivity" for purposes of establishing a possessory interest in publicly owned real property requires either (1) that the taxpayer enjoy a primary right of use or (2) a concurrent right of use, but only if it appears very remote that there will be interference with the taxpayer's actual use.

■ Our reading of the cases, however, convinces us that the element of exclusivity does not depend on a finding that there is no, or only a very remote, possibility of interference. The possibility of interference with use affects the value, but not the existence of a possessory right. A possessory right is valuable—and thus, logically should be taxable, even if there is some possibility of interference. As recognized by the court in *Archer*: "It is not the preemption right, but is the possession and valuable use of the land subsisting in the citizen. *Why should it not contribute its proper share, according to the value of the interest, whatever it may be, of the taxes necessary to sustain the Government which recognizes and protects it?*" (18 Cal.App.3d at p. 725.)

Nonetheless, as discussed, in order to be taxable a possessory right, by statute, must in some sense be exclusive. In our opinion, that sense is fulfilled if others are excluded from enjoying the same right. Exclusivity ordinarily involves the grant of some special right of use from the public entity. The taxpayers in *Archer* had an exclusive right not because there was only a remote possibility that another permittee might interfere with their use, but because one could not pasture cattle on the land without having obtained a grazing permit. The rights to use the maritime facilities enjoyed by the taxpayers in *Sea-Land* and *Seatrain* were exclusive not because their usage was primary but because it was specially granted to the them by contract. The rights of the 80 commercial rafters to conduct river-rafting expeditions down the South Fork of the American River were exclusive because they were granted by special permit and no other commercial rafter enjoyed a similar right.

The opinion in *Lucas v. County of Monterey* (1977) 65 Cal.App.3d 947 [135 Cal.Rptr. 707] lends further support to our conclusion. In that case, the Moss Landing Harbor District had issued a permit to a taxpayer which entitled him to use a berth. The harbor district, however, retained the right to permit others to use the same berth on a temporary basis in the taxpayer's absence. In addition, the taxpayer suffered interference with that right in that he could be required to use a different berth when the one assigned to him was being used by someone else. The court there held: "Appellant possesses something that others have formed a waiting list to secure. The interest is a valuable possession. The possible instability of rights as between holders of

the permits should be taken into account when fixing value, but it does not alter the fact that the permittee is presently enjoying the use of the berth." (*Id.* at p. 956.) Against the argument that the taxpayer's use was not truly exclusive, the court held, " 'exclusive' has been given broad interpretation by the courts. The nontransferability, the possibility of the permit's revocation, limitations on the possessory use, or sharing of the use do not go to determining whether the interest is possessory, but merely to valuation." (*Ibid.*)

■ In the present case, Euro-Pacific has a valuable, contractually granted right to possession that is exclusive in that it is shared only with entities which have similar special agreements with the Port of Oakland. That the right is concurrent with the rights of others, and that the concurrent use of others may interfere with it, is relevant to the value of the interest, but does not alter the fact that there is indeed a possessory interest.

CONCLUSION

The judgment is affirmed.

Newsom, Acting P. J., and Dossee, J., concurred.

A petition for a rehearing was denied January 11, 1993, and appellant's petition for review by the Supreme Court was denied March 11, 1993.