[No. B195763. Second Dist., Div. One. Apr. 4, 2008.]

KOREAN AIR LINES CO., LTD., Plaintiff and Respondent, v. COUNTY OF LOS ANGELES, Defendant and Appellant.

554

COUNSEL

Raymond G. Fortner, Jr., County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Appellant.

Bewley Lassleben & Miller, Jason C. DeMille, Jeffrey S. Baird and Joseph A. Vinatieri for Plaintiff and Respondent.

OPINION

JACKSON, J.*—

## INTRODUCTION

Defendant County of Los Angeles appeals from a judgment awarding plaintiff Korean Air Lines Co., Ltd., the refund of certain property taxes and a postjudgment attorney's fees order. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

During property tax years 1999, 2000 and 2001 (subject tax years), plaintiff Korean Air Lines was an international air carrier which transported passengers by airplane between cities located in Asia, Europe, the Middle East and Oceania, and various cities in North America, including Los Angeles.

Plaintiff entered into a written lease with the City of Los Angeles (the City), the owner of Los Angeles International Airport (LAX), for space in the Tom Bradley International Terminal (Terminal). The lease consisted of three spaces: space exclusive to plaintiff for ticket counter, ticket office areas, and other areas, referred to as the "leased premises"; "joint-use space," consisting of the departure lounge area, baggage service area, baggage claim area, security interline area, joint-use security sky cap offices and other areas which were also used by other airlines; and the federal inspection service area (FIS area) including customs area, federal inspection service offices, baggage service area, customs baggage claims area, cashier area, interline baggage area, immigration inspection area, storage area, locker area, transit lounge space, federal inspection service swing area, conference room area, registration area and other areas. The FIS area is the disputed space in this appeal.

During the subject tax years, the agencies that conducted inspections in the FIS area included the former Immigration and Naturalization Service, the

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

United States Customs Service, the United States Animal and Plant Health Inspection Service, the United States Public Health Service and United States Fish and Wildlife Service (FIS agencies). International flights arriving at the Terminal, including plaintiff's flights, were processed through the FIS area.

For each of the subject tax years, defendant County of Los Angeles determined that plaintiff had a taxable possessory interest in the space covered by the lease, including the FIS area, and billed plaintiff for the tax assessed. Plaintiff timely paid each tax bill in full. In September 2001, plaintiff filed an application for changed assessment with the Los Angeles County Assessment Appeals Board (Board) for 2001, disputing that plaintiff had a taxable possessory interest in the FIS area. After a hearing and reducing plaintiff's 2001 assessment for reasons unrelated to this action, the Board denied plaintiff's application with respect to the FIS area. Plaintiff did not file applications for changed assessment with respect to the FIS area for 1999 or 2000.

In March 2004, plaintiff filed a claim for refund for property taxes pursuant to Revenue and Taxation Code section 5097[1] for the subject tax years on the basis that it did not have a taxable possessory interest in the FIS area and, therefore, it disputed the validity of the possessory interest tax levied on the FIS area. In May 2004, plaintiff filed amended claims. Defendant failed to act on the claims. In accordance with section 5141, subdivision (b), plaintiff elected to consider the claims rejected.[2]

Plaintiff filed a complaint for refund of taxes paid for the subject tax years on the FIS area on February 4, 2005, and filed its first amended complaint, the operative complaint herein, on May 3, 2005. A bench trial was held on May 8, 2006. The evidence presented consisted of stipulated facts, judicially noticed documents, and testimony from plaintiff's two witnesses, its facilitation manager at LAX and the assistant port director at the Terminal. After defendant requested a statement of decision, plaintiff submitted a proposed statement and defendant filed its objections. The trial court issued the proposed statement and entered judgment.

As set forth in the statement of decision, the trial court concluded: (1) Plaintiff has no taxable possessory interest in or over the FIS area, in that the element in section 107, subdivision (a), of "independence" is missing because plaintiff had no authority or control over the FIS area, sole authority and control being held by federal inspection services agencies. The assessments for the FIS area for 1999, 2000 and 2001 are void as an attempt to tax

---

[1] All further statutory references are to the Revenue and Taxation Code, unless otherwise specified.

[2] The foregoing portion of the factual and procedural background was summarized from the stipulation of facts executed by the parties on April 28, 2006.

property that is not subject to taxation. Therefore, plaintiff is entitled to a refund of taxes paid plus interest from the date of payment. (2) Pursuant to the assessor's belief that the example in Property Tax rule 20 was invalid and in conflict with section 107, he should have followed the section 538 procedures in lieu of making assessments which were void. Therefore, plaintiff is entitled to attorney's fees and costs pursuant to section 5152.

On July 7, 2006, the trial court issued judgment against defendant, awarding plaintiff the refund of property taxes paid on the FIS area for 1999, 2000 and 2001, plus interest from the date of payment, and attorney's fees and costs. In March 2007, the trial court issued an order fixing the amount of attorney's fees.

## DISCUSSION

### 1. *Section 5142 Bar Inapplicable*

Defendant first claims that plaintiff's refund recovery is barred by statute. Section 5142 provides that "[n]o recovery shall be allowed in any refund action upon any ground not specified in the refund claim." Defendant asserts that plaintiff's refund claim was based on the "exclusivity" element of the definition of a possessory interest. In the trial court proceedings, however, plaintiff's allegations were on the "independent" element. Defendant raises its statutory bar defense for the first time on appeal. Having failed to plead and prove it as an affirmative defense in the trial court proceedings, defendant cannot raise it on appeal.[3] (*Lucich v. City of Oakland* (1993) 19 Cal.App.4th 494, 498 [23 Cal.Rptr.2d 450]; *Curcio v. Svanevik* (1984) 155 Cal.App.3d 955, 960 [202 Cal.Rptr. 499].)

---

[3] In any event, review of plaintiff's claims for refund and related contentions indicates that they are sufficiently broad to encompass "independence" as well as "exclusivity." The grounds were that "[n]o possessory interest exists as the [FIS] area is under the exclusive control of the United States Government. [Plaintiff] has no legal right to use of the FIS area. Accordingly, [plaintiff] has no exclusivity with respect to the area." If plaintiff claimed the FIS area was under the exclusive control of the federal government, a logical implication is that plaintiff was also claiming that it had no independent right and ability to exercise significant authority and control over the management of the area. (§ 107, subd. (a)(1); Cal. Code Regs., tit 18, § 20, subds. (a), (c)(5).) As noted in *Focus Cable of Oakland, Inc. v. County of Alameda* (1985) 173 Cal.App.3d 519 [219 Cal.Rptr. 95], California courts "liberally construe claims for refund of taxes. . . . 'It has been stated that an application is adequate and "the purpose of the statutory requirement is served if the board may know from said application 'or have some reasonable means of ascertaining' therefrom what the claim of the applicant is, to the end that such claims may be investigated by the assessing authorities prior to the hearing." [Citation.]' [Citation.]" (*Id.* at pp. 526–527; accord, *Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 206 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)

## 2. *Overview of Legal Principles on the "Independent" Element for Taxability*

The pivotal issue on appeal is whether plaintiff has a taxable possessory interest in the FIS area pursuant to section 107 and its implementing regulation, California Code of Regulations, title 18, section 20, which is also referred to as Property Tax Rule 20.[4] The parties agree that the relevant facts are undisputed. Accordingly, the issue on appeal is a question of law and our review is de novo. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

■ Section 107, in pertinent part, provides: " 'Possessory interests' means the following: [¶] (a) Possession of, claim to, or right to the possession of land or improvements that is independent, durable, and exclusive of rights held by others in the property, except when coupled with ownership of the land or improvements in the same person. For the purposes of this subdivision: [¶] (1) 'Independent'[5] means the ability to exercise authority and exert control over the management or operation of the property or improvements, separate and apart from the policies, statutes, ordinances, rules, and regulations of the public owner of the property or improvements. A possession or use is independent if the possession or operation of the property is sufficiently autonomous to constitute more than a mere agency. [¶] (2) 'Durable' means for a determinable period with a reasonable certainty that the use, possession, or claim with respect to the property or improvements will continue for that period. [¶] (3) 'Exclusive' means the enjoyment of a beneficial use of land or improvements, together with the ability to exclude from occupancy by means of legal process others who may interfere with that enjoyment. [¶] For purposes of this paragraph, 'exclusive use' includes the following types of use in property [as listed in the remainder of subdivision (a)(3)]." Rule 20 tracks the statutory language closely.[6]

"Independence" is determined "on a case-by-case basis in light of the entire agreement between the user and the granting public entity. [Citations.]

---

[4] Hereinafter, "Rule" shall refer to a Property Tax Rule as set forth in the same numbered section of California Code of Regulations, title 18.

[5] The essential elements set forth in section 107, subdivision (a), are referred to hereinafter either as "independent," "durable" and "exclusive," or, when it would be grammatically more appropriate, as "independence," "durability" and "exclusivity."

[6] Rule 20 provides, in pertinent part:

"(a) Possessory Interests. 'Possessory interests' are interests in real property that exist as a result of: [¶] (1) A possession of real property that is independent, durable, and exclusive of rights held by others in the real property, and that provides a private benefit to the possessor, except when coupled with ownership of a fee simple or life estate in the real property in the same person; or [¶] (2) A right to the possession of real property, or a claim to a right to the possession of real property, that is independent, durable, and exclusive of rights held by others

In general, independence may be measured by the amount of 'routine control and supervision' enjoyed by the user, with the recognition that the government necessarily retains ultimate control. [Citation.] If the public owner retains sufficient control, the user may be considered to be an agent, and the public entity's immunity from taxation extends to the user. [Citation.] Furthermore, 'independent' uses may be identified by any profit motive of the user as distinguished from those conducted with a governmental purpose. [Citations.]" (*City of San Jose v. Carlson* (1997) 57 Cal.App.4th 1348, 1356 [67 Cal.Rptr.2d 719].)

The "independence" element has been the subject of disparate treatment in California courts. (*City of San Jose v. Carlson, supra*, 57 Cal.App.4th at p. 1356.) For example, in *Pacific Grove-Asilomar Operating Corp. v. County of Monterey* (1974) 43 Cal.App.3d 675, at pages 693 through 694 [117 Cal.Rptr. 874], "independence was found lacking because every aspect of the nonprofit corporation's use was controlled by the state and the corporation derived no private benefit from its operations. In *Freeman v. County of Fresno* [(1981)] 126 Cal.App.3d [459] at page 465 [178 Cal.Rptr. 764], the court minimized the significance of independence as an element separate from exclusivity. The degree of control by the public owner, the court held, merely 'goes to the question of valuation, not to whether the use is or is not exclusive.' " (*City of San Jose v. Carlson, supra*, at p. 1356.)

The legislative history of section 107 provides a perspective for applying its three elements in the context of the disparate treatment found in judicial opinions. When enacted in 1939, section 107, subdivision (a), was brief and defined a "possessory interest" as the "[p]ossession of, claim to, or right to the possession of land or improvements, except when resulting from ownership of the land or improvements." (Stats. 1939, ch. 154, § 107, p. 1277.) In *Kaiser Co. v. Reid* (1947) 30 Cal.2d 610 [184 P.2d 879], the Supreme Court

---

in the real property, and that provides a private benefit to the possessor, except when coupled with ownership of a fee simple or life estate in the real property in the same person; or [¶] (3) Taxable improvements on tax-exempt land.

"(b) Taxable Possessory Interests. 'Taxable possessory interests' are possessory interests in publicly-owned real property. [Excluded are federal enclaves].

"(c) Definitions. For purposes of this regulation: [¶] . . . [¶] (5) 'Independent' means a possession, or a right or claim to possession, if the possession or operation of the real property is sufficiently autonomous to constitute more than a mere agency. To be 'sufficiently autonomous' to constitute more than a mere agency, the possessor must have the right and ability to exercise significant authority and control over the management or operation of the real property, separate and apart from the policies, statutes, ordinances, rules, and regulations of the public owner of the real property. For example, the control of an airport runway or taxiway by the Federal Aviation Administration (FAA) or another government agency or its agent is so complete that it precludes the airlines from exercising sufficient authority and control over the management or operation of the runways or taxiway and does not constitute sufficient 'independence' to support a possessory interest." (Cal. Code. Regs., tit. 18, § 20, subds. (a), (b), (c)(5).)

first set forth three essential elements for determining if a taxable possessory interest exists. (*Freeman v. County of Fresno, supra,* 126 Cal.App.3d at p. 463.) "The agreement [between the possessor and the public owner] had to confer use and possession (1) for a reasonably certain determinable period, (2) which was exclusive against all the world, including the rightful owner, and (3) which generated a valuable private benefit." (*Ibid.*)

Over time, the requirements were applied in a "less demanding way so as to find a taxable interest in most cases in which the private use of public property [had] been special to the person concerned and valuable." (*Freeman v. County of Fresno, supra,* 126 Cal.App.3d at p. 463.) In response to case law and the perceived protax trend, the Legislature in 1995 passed an amendment to specify the elements necessary to define a possessory interest as taxable, as set forth in section 107. (Stats. 1995, ch. 498, §§ 4, 18, pp. 3829–3830, 3842, amended by Stats. 1996, ch. 171, § 2, p. 1353 [typographical correction]; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 657 (1995–1996 Reg. Sess.) June 29, 1995, pp. d–e.[7]) Rule 20 was promulgated soon after the amendment became effective.

■ The parties cite and discuss, and we have found, only one post-1995 opinion which addresses the "independence" element, *City of San Jose v. Carlson, supra,* 57 Cal.App.4th 1348. The appellate court reviewed basic principles applicable to a taxable possessory interest in land or improvements owned by a public entity: "Because the facilities at issue are owned by the [public entity], they are not subject to real property taxes. (Cal. Const., art. XIII, § 3.) Private uses of such property may be taxed, however, if those uses constitute 'possessory interests.' (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, §§ 104, 107, 201.) As the Supreme Court has explained, 'When the city leases its land . . . it does not merely use it. It creates valuable privately-held possessory interests, and there is no reason why the owners of such interests should not pay taxes on them just as lessees of private property do through increased rents. Their use is not public, but private, and as such should carry its share of the tax burden.' [Citation.] Thus, taxation of possessory interests is rooted in the belief that 'the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity

---

[7] The cited portion of the analysis of section 4 of the bill provides: "Existing law includes as a taxable real property interest the exclusive right of a private party to use public property—a so-called 'possessory interest.' Although the concept has existed since ancient times, assessors in recent years have been increasingly creative in assessing possessory interests. [¶] . . . [¶] This section of the bill is intended to clarify the nature and meaning of 'possessory interest' in light of recent court decisions. [¶] The bill states legislative interest that taxpayer compliance, uniformity of administration and the business climate will all be improved by amendments to the possessory interest law." (Sen Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 657 (1995–1996 Reg. Sess.) June 29, 1995, p. d.)

which makes its possession possible and provides a certain amount of exclusivity.' [Citations.]" (*City of San Jose, supra,* at pp. 1352–1353.)

### 3. Contentions on Appeal

Defendant contends that plaintiff has a taxable possessory interest in the FIS area, in that the three essential elements under section 107—"independence," "durability" and "exclusivity"—characterize plaintiff's use of the FIS area. The essential element plaintiff contends is missing, and that the trial court ruled is missing, is the element of "independence." Defendant contends that determination of whether plaintiff's possession or use is "independent" under section 107 requires consideration of more factors than the measure utilized by the trial court and relied upon by plaintiff—the extent to which plaintiff has physical control over the FIS area—and ultimately hinges upon whether plaintiff is the agent of the public owner, the City. Defendant claims that the "independence" element must be interpreted in accordance with the element's purpose and that the purpose is limited to addressing "whether a possessor holds rights in the subject property in his own capacity, or rather merely as an agent of the government landlord." (See *City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pp. 1352–1353.) For the reasons we discuss more fully below, we agree with defendant.

### 4. Application of the "Independence" Element to the FIS Area

■ Determination of the taxability of plaintiff's interest in the FIS area necessarily requires interpretation of the statutory definition of "independent" in section 107, subdivision (a)(1). The guiding principle is to interpret the statute in accordance with legislative intent " 'so as to effectuate the purpose of the law.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 338 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) To determine legislative intent, we first focus on the words of the statute, giving them their ordinary and plain meaning. (*Ibid.*)

In its statement of decision, the trial court appeared to give the words their ordinary and plain meaning, but treated the two sentences of the definition as if one could be read without the other. The court stated that defendant appeared to focus only on the agency status in the second sentence, rather than properly looking to the control status in the first sentence. It appears that the court applied only the first sentence, in that the court found that the FIS agencies had absolute control over the FIS area, and thus, plaintiff lacked control as required by the statute to render plaintiff's use "independent."

■ Such a bifurcated approach is inconsistent with the principle that a statutory provision must be construed with reference to the entire statutory

scheme of which it is a part in order to give effect to the whole. (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1303–1304 [4 Cal.Rptr.3d 629].) Interpreting the statutory definition of "independent" as a whole, the first sentence describes the type of autonomy required: "the ability to exercise authority and exert control over the management or operation of the [area in question], separate and apart from" the constraints imposed by legal and policy requirements of the public owner. (§ 107, subd. (a)(1).) The second sentence delineates the degree of such autonomy required for independence: "[a] possession or use is independent if the possession or operation of the property is sufficiently autonomous to constitute more than a mere agency." (*Ibid.*)

■ Civil Code section 2295 defines an agent as "one who represents another, called the principal, in dealings with third persons." An agent acts on behalf of the principal and subject to the principal's control. (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 [6 Cal.Rptr.3d 746].) " 'In the absence of the essential characteristic of the right of control, there is no true agency . . . .' " (*Id.* at p. 572.) Thus, plaintiff's control over its possession and use of the FIS area is the central factor in determining "independence."

We look first to the terms of the lease between plaintiff and the City for the FIS area, in that "independence" is determined "on a case-by-case basis in light of the entire agreement between the user and the granting public entity." (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1356.) The lease terms support a conclusion that plaintiff's use is "independent." They do not include the types of stringent financial and operational controls which courts have recognized as indicating that a use may not be "independent," but rather may be a "mere agency." (See, e.g., *Pacific Grove-Asilomar Operating Corp. v. County of Monterey, supra,* 43 Cal.App.3d at pp. 679–680 [control over the collection and place of deposit of income; prohibition against commercial use].)

Plaintiff has built its case, however, primarily on the myriad of federal laws and regulations governing the physical facilities and operation of the FIS area, rather than specific terms and conditions imposed by the lease. The lease does, in fact, include paragraphs 6 and 16, which expressly required plaintiff to comply with applicable federal, state and local law in general and also specifically in regard to security at the airport. Plaintiff contends that required compliance with federal law effectively precluded plaintiff from having any authority or control over its use of the FIS area. Plaintiff does not claim that as a result of its agreement to comply with federal law, it became the agent of the FIS agencies or the City. Where the public owner did not have sufficient control to constitute an agency, courts have determined that

the user retained sufficient control to qualify its use as "independent." (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1358; *Scott-Free River Expeditions, Inc. v. County of El Dorado* (1988) 203 Cal.App.3d 896, 911–912 [250 Cal.Rptr. 504].) No provision of the lease and none of the other facts support a finding that when plaintiff used the FIS area for deplaning its passengers and crew, plaintiff was acting on behalf of, and hence, as the agent of, the federal government or the City. (*van't Rood v. County of Santa Clara, supra,* 113 Cal.App.4th at p. 571.)

■ Other factors also support a conclusion that plaintiff's use of the FIS area qualifies as "independent." The fact that the federal government had substantial authority and control with respect to the FIS area does not negate the possibility that plaintiff retained sufficient autonomy over its activities in the FIS area to qualify as being "independent." A lessee of publicly owned property such as plaintiff need not have absolute control over a space for its rights to use the space to constitute an "independent" use. Courts have long recognized that the public owner "necessarily retains ultimate control." (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1356.) Having "the responsibility to safeguard the use of public property, [the public owner] would be remiss if it did not retain *ultimate* control over such use, by [a possessor] as well as by the public . . . ," and where "much is left to the routine control and supervision of the [possessor, w]e conclude that the [possessor] has sufficient independence of operation to meet" the taxability requirement. (*Stadium Concessions, Inc. v. City of Los Angeles* (1976) 60 Cal.App.3d 215, 225 [131 Cal.Rptr. 442].)

■ We agree with defendant's assertion that use of a space for a profit-making enterprise or other private benefit is an integral factor in establishing "independence," and, that plaintiff's use of the FIS area is for the purpose of commercial profit, not for governmental purposes. (*Scott-Free River Expeditions, Inc. v. County of El Dorado, supra,* 203 Cal.App.3d at pp. 911–912.) Defendant cites the opinion which first articulated the three essential elements ultimately codified in section 107, *Kaiser Co. v. Reid, supra,* 30 Cal.2d 610. The *Kaiser* court first acknowledged the definition of a "usufructuary right" as being " ' "the right of using and enjoying the profits of a thing belonging to another, without impairing the substance." ' " (*Id.* at p. 621.) Then the court stated that "plaintiff's assessment [for its possessory interest] stemmed from its use of the land and facilities in the shipyards [owned by the federal government] as essential to its production of ships *at a profit,* a right of possession *consistent with its operation as an entrepreneur in business on its own account,* and not simply as a bailee or agent of the government. Under the [contracts with the government], plaintiff was not given merely the right to perform services for the government, but it was required 'as independent contractor and not as agent' to construct and deliver the scheduled vessels 'at [its] own risk' . . . . Such contract provisions

correlated plaintiff's occupancy of the shipyards with its possession of a 'usufructuary right' therein pursuant to its performance of the scheduled work under an independent profit-earning arrangement for its own benefit—a 'possessory interest arising to the dignity of taxable property' under California law." (*Id.* at pp. 621–622, italics added.) In the instant action, the facts indicate that plaintiff leased the rights to use the FIS area and the other two spaces for "*its operation as an entrepreneur in business on its own account*" pursuant to its profit motive. (*Id.* at p. 621.)

■    Plaintiff's use of the FIS area is consistent with the synergy in the relationship between control and profit motive in determining that a use is "independent." Where a public owner retains a substantial degree of control consistent with its duties to its personnel and the public, but the possessor retains sufficient control to obtain profit or other private benefit from the use, the possessor's use has been determined to meet the "independence" requirement, as illustrated by *City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pages 1356 through 1358. At issue in *City of San Jose* was whether the degree of control exercised by the public owner of a convention center over matters which otherwise would be under the routine control and supervision of the user pursuant to its use permit was so severe that the user did not have the "independence" required for its use to constitute a taxable possessory interest. The permit set forth lengthy conditions and limitations with respect to the use of the facilities.[8] The appellate court concluded that the permit conditions were not "so 'severe' as to constitute an agency relationship with the" public owner, but rather, accorded "sufficient control to the [users] to meet the criterion of independent possession." (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1358.) The court noted that most of the conditions were consistent with the public owner's duties related to the health and safety of the personnel and the public, and the user, not the public owner, would be entitled to profits from its use of the convention center. (*Ibid.*)

In the instant case, the matters over which the FIS agencies have control also relate to the health and safety of the public. Plaintiff concedes that it received private benefit, enhancement of its profit-making commercial interest, by having the right for its passengers and employees to have access to the FIS area. These are indicators that its use of the FIS area was "independent." (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1358.)

---

[8] They included such matters as the personnel, including the selection by the public owner, number it would allow, and provide and the rate of compensation which the user was required to pay the personnel, for such services as stagehands, ticket sellers, and security; control of access to the premises by a public employee; required use of specified caterers and certified utility contractors; selection of and reservation of the right to sell concessions, programs and novelties; and user compliance with advertised prices, opening times and intermission requirements. (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pp. 1356–1358.)

The fact that plaintiff had "more than a mere right shared with the general public" (*Freeman v. County of Fresno, supra,* 126 Cal.App.3d at p. 464) gave plaintiff a measure of control over use of the FIS area not shared with the general public. That is, plaintiff had "a special right of access for profit which was not shared in common by all who entered the airport terminal." (*Ibid.*) It applied to plaintiff's passengers, crew and employees assisting the passengers, in that plaintiff had secured such access through the lease. Moreover, plaintiff's right arose pursuant to its lease with the City, independently of any control of such access by the FIS agencies.

Plaintiff's contention of absolute governmental control is analogous to the plaintiffs' claim in *Scott-Free River Expeditions, Inc. v. County of El Dorado, supra,* 203 Cal.App.3d 896. The plaintiffs contended that through the county's use permit system, the county's regulation and control over their commercial river rafting enterprises was so pervasive that plaintiffs' use was not "independent" and thus not a taxable possessory interest. (*Id.* at p. 911.) The plaintiffs' routine control and supervision of the permit area—the river—was essentially limited to having and exercising the right to get their rafts, passengers and employees into and out of the river and to control their rafts and to some extent, the activities on board, taking up whatever limited river space was required, as the rafts moved down the river. The court held that the plaintiffs exercised sufficient control to conduct their profit-making enterprise and thus, their use constituted an "independent" taxable possessory interest. (*Id.* at pp. 911–912.)

Just as the river had physical limits concerning how many rafts could concurrently use it, the FIS area included in plaintiff's lease has physical limits. It can hold and allow inspections of only a finite number of passengers, crew and other employees at a time. Not every or just any airline had the right to funnel its employees and passengers through the FIS area—only those airlines which, like plaintiff, had lease agreements with the City which gave them the right to use the FIS area as part of the operation of their private for-profit business enterprise.

The FIS area was one of three spaces plaintiff leased. The three spaces operated as a unit with respect to plaintiff's commercial enterprise at LAX by providing a defined location for plaintiff to serve departing and arriving passengers, their baggage and other needs and desires related to their travel via plaintiff's aircraft. If the taxability of one of multiple leased spaces is at issue, as in this case, and the spaces operate as a unit in the user's profit-oriented enterprise, the conclusion is that the use of the one space is "independent," just as is its use of the other spaces. (See, e.g., *Mattson v. County of Contra Costa* (1968) 258 Cal.App.2d 205, 210 [65 Cal.Rptr. 646].) Plaintiff admits that its rights to use the FIS area are commercially valuable

and benefit it in furtherance of its profit motive. It follows that if plaintiff had lost its right of use for its passengers and employees to have access to the inspection services in the FIS area, its ability to operate profitably in LAX would have likely been significantly impaired.

The parties have cited to only one judicial opinion in which a refund was granted on the basis that the public owner had absolute control of the possessor's use and therefore, possessor's interest was not taxable. In *Pacific Grove-Asilomar Operating Corp. v. County of Monterey, supra*, 43 Cal.App.3d 675 at pages 679 through 680, the court concluded that the plaintiff nonprofit corporation was a mere agent of the public owner, the State of California, which retained absolute control of plaintiff's use, and affirmed the trial court's judgment awarding the corporation refund of taxes paid on its purported taxable possessory interest in the real property and improvements on the state-owned "Asilomar Conference Grounds." (*Ibid.*) Although the opinion was issued well before the 1995 amendment to section 107, the court applied the same three criteria for determining a taxable possessory interest: " 'there must be a right that is sufficiently exclusive, durable, and independent of the public owner to constitute more than an agency.' " (43 Cal.App.3d at p. 684.)

Among the factors the court cited in rendering its decision were the stringent controls the state had required in its agreement for the corporation to manage and operate the conference grounds. (*Pacific Grove-Asilomar Operating Corp. v. County of Monterey, supra*, 43 Cal.App.3d at pp. 679–680, 689.) The controls included, inter alia, that the conference grounds were to be managed and maintained for use by the general public, the legal interest created was a mere license, commercialization for profit was forbidden, the income had to be deposited in a state-approved trust account, budgets, funds transfers and surplus funds were under state control, and the corporation was established solely to manage the conference grounds, its directors were appointed by a state official upon approval by a state commission, and its articles and bylaws could not be changed without the consent of the state. (*Id.* at pp. 688–689.)

The relation of profit motive to the issue of whether sufficient autonomy was retained by the user to constitute an "independent" use was a material factor in the court's decision. The state chief of the Concession Division of the Department of Parks and Recreation testified that the corporation's operation was unique when compared to other concessions operations, in that the other concessionaires are for-profit enterprises and their operations are profit-oriented, they pay rent and the state does not control their income, expenditures or budget. (*Pacific Grove-Asilomar Operating Corp. v. County of Monterey, supra*, 43 Cal.App.3d at pp. 688–689.) The court determined that

the corporation's use of the conference grounds was not independent, but rather "subject in every way to state control . . . [in] every aspect . . . , from budget plans to capital investment" and that the corporation gained no private benefit from operating the premises. (*Id.* at p. 693.) The court stated that "the fact that the relationship between [the corporation] and the state has no profit motive is an element material in determining" that the corporation had no taxable possessory interest in the conference grounds. (*Id.* at p. 695.)

The type and extent of control exercised by the FIS agencies over the FIS area was much more limited and of a different nature than the control described in the *Pacific Grove-Asilomar* case. Plaintiff does not claim, for example, that it is forbidden to engage in commercial activity or is required to give either the FIS agencies or the City control over its fiscal or corporate affairs. There is no evidence that plaintiff was organized for the purpose of managing any area on behalf of a governmental entity. Rather, the facts show that plaintiff is profit-oriented and pays rent to the City for use of the FIS area.

Plaintiff has cited many federal laws, regulations and guidelines with regard to the facilities and operation of the FIS area, as it presented such materials into evidence in the trial.[9] In its statement of decision, the trial court cited a publication entitled "Technical Standards for Customs Passenger Processing at Airports" (2001) published by the United States Customs Service as support for its finding that the federal government had absolute control over the FIS area. The trial court emphasized one provision in particular, which stated as follows: "When the facility is complete and has been accepted for occupancy, **the spaces within the secure FIS perimeter fall under the sole control of the government.** All physical access to the facility and proposed future alterations or additions must be submitted to and approved by an authorized representative of each federal agency present."[10]

The trial court indicated that its finding that plaintiff had no authority or control over the management or operation of the FIS area was supported by the following facts arising from the federal materials and related evidence provided by plaintiff: (1) the FIS area is a restricted area and "the FIS area [was] under the control of the [federal] Port Director who [had] broad authority to permit or deny access to the FIS area"; (2) plaintiff's employees

---

[9] We need not discuss the cited federal sources here or render an opinion concerning their scope and effect with regard to plaintiff's use of the FIS area, in that our analysis and conclusions herein would not be affected by whether the characterization of them by plaintiff or the trial court was accurate.

[10] No citation to any supporting law was given. In another passage quoted by the trial court, the publication is identified as "performance and methodology oriented outlining the significant physical characteristics of an airport inspection facility . . . ."

could be present only when plaintiff's passengers and crew were being inspected. Only six or seven of plaintiff's employees were present during any of plaintiff's flight activity and could not reasonably been able to have control over the FIS, the square footage of which was roughly equal to three and a half acres; (3) although plaintiff's lease was for deplaning facilities at the Terminal, FIS agencies could require plaintiff's arriving flights to deplane in other terminals; (4) plaintiff had no control over several significant management and operational matters, including the FIS agencies or their employees, any baggage or other facilities in the FIS area, the opening or closing of the FIS area or who was allowed to enter it or how it was used, the lighting, heating or cooling or the security of the FIS area, the improvement or maintenance of the area and signage in the FIS area.

In our view, the evidence cited by the trial court clearly supports a conclusion that plaintiff was not a mere agent of the FIS agencies or the City and accordingly, retained sufficient authority and control for its use to be properly categorized as "independent." The trial court's findings show that plaintiff was not authorized to carry out governmental purposes on behalf of the FIS agencies or the City as a mere agent would be. (Civ. Code, § 2295.) Unlike the possessor in *Pacific Grove-Asilomar*, plaintiff leased and used the FIS area for its own purposes for, and in furtherance of, its profit motive, not for the purposes of the federal government or the City. (*Pacific Grove-Asilomar Operating Corp. v. County of Monterey, supra,* 43 Cal.App.3d at p. 695.) There is no claim and no evidence that plaintiff entered into an agreement with either the federal government or the City pursuant to which plaintiff was authorized to act on behalf of either of them or conducted its use in a manner that would create an ostensible agency. (*van't Rood v. County of Santa Clara, supra,* 113 Cal.App.4th at pp. 571–572.)

At most, the evidence, as summarized by the trial court, shows that in exercising its authority and control with respect to the FIS area, plaintiff was required to operate within the applicable federal law, and whether its operational and management decisions or policies with respect to its passengers, crew and other employees would be fully carried out was subject to the ultimate control of the federal authorities. This is consistent with measuring "independence" by the amount of routine control and supervision enjoyed by the possessor, recognizing that the government "necessarily retains ultimate control." (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at p. 1356.)

Moreover, while the governmental control over the FIS area may have been ultimate, it was not absolute. For example, presumably, plaintiff, not the Port Director, could select the employees it wanted to have access to the FIS area on a routine basis and designate the work each was to perform on behalf of plaintiff and the flights for which it was to be performed. That each

employee's ability to access the FIS area was subject to prior governmental approval through an application process or that certain government personnel had the authority to withdraw the approval or to require the employee to exit the area in certain circumstances did not constitute absolute governmental control. Plaintiff routinely controlled the volume and designation of its arriving flights from which its passengers and crew would deplane and move into the FIS area. To the extent that the FIS agencies had authority to block the deplaning of such a flight at the Terminal, there is no evidence that such blocking was to be routinely done, but rather that the FIS agencies had the ultimate authority to do so.

### 5. *Taxable Possessory Interest in the FIS Area*

■ For the foregoing reasons, we conclude that plaintiff has sufficient autonomous authority and control over its use of the FIS area for its use to qualify as "independent" under section 107, subdivision (a). ■ In order for its use to constitute a taxable possessory interest, it must also be "durable" and "exclusive" as defined in section 107. Plaintiff has not contested that its use of the FIS area met the "exclusivity" or "durability" criteria to constitute a taxable possessory interest under section 107, subdivision (a).

In any event, as the foregoing discussion of the satisfaction of the "independence" criterion also shows, plaintiff's rights in the FIS area were greater than the rights of the general public (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pp. 1358–1359) and sufficiently protected by the lease as against rights of other joint-user airlines to qualify plaintiff's use of the FIS area as "exclusive" (*Freeman v. County of Fresno, supra,* 126 Cal.App.3d at pp. 464–465). Its "exclusivity" was not destroyed by concurrent use by other airlines or persons (see Rule 21(e); *City of San Jose, supra,* at p. 1359). Just as the shared use of property with others does not defeat the exclusivity requirement for taxability, but merely affects valuation of the taxable interest (*Scott-Free River Expeditions, Inc. v. County of El Dorado, supra,* 203 Cal.App.3d at pp. 908–910), similarly the shared control of property with government does not defeat the "independence" requirement, but merely affects the valuation of the taxable interest (see *Freeman v. County of Fresno, supra,* at p. 465).

As to "durability," section 107, subdivision (a)(2), provides the applicable definition: " 'Durable' means for a determinable period with a reasonable certainty that the use, possession, or claim with respect to the property or improvements will continue for that period." The fact that plaintiff had the right to use of the FIS area pursuant to the lease from 1992 and continuing through the 2001 date it filed the assessment appeal application is more than

sufficient to establish that plaintiff's right is "durable" under section 107, subdivision (a). (*City of San Jose v. Carlson, supra,* 57 Cal.App.4th at pp. 1354–1355.)

We conclude that plaintiff had a taxable possessory interest in the FIS area for the subject tax years and, therefore, assessment for the interest was valid. (§ 107.) Our conclusions render the remaining issues moot. Accordingly, the judgment, as well as the postjudgment attorney's fees order arising from it, must be reversed.

## DISPOSITION

The judgment and postjudgment attorney's fees order are reversed. Each party shall bear its own costs on appeal.

Mallano, Acting P. J., and Rothschild, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 13, 2008, S164240.