[No. A120971. First Dist., Div. Four. May 20, 2009.]

AIR CHINA LIMITED, Plaintiff and Appellant, v.
COUNTY OF SAN MATEO, Defendant and Respondent.

16

## COUNSEL

Wilson, Elser, Moskowitz, Edelman & Dicker, Stephen L. Nelson, George N. Tompkins, Jr., George N. Tompkins III and Margaret J. Elliott for Plaintiff and Appellant.

Michael P. Murphy, County Counsel, and Eugene Whitlock, Deputy County Counsel, for Defendant and Respondents.

## OPINION

**RIVERA, J.**—Air China Limited appeals from a summary judgment entered in favor of San Mateo County (the County) finding that the County's assessment and collection of taxes on Air China's leasehold possessory interests and landing rights at the San Francisco International Airport (Airport) pursuant to California Revenue and Taxation Code[1] sections 107 and 107.9 were proper. Air China contends that a tax treaty between the United States and the People's Republic of China (PRC) prohibits the County from imposing taxes on its operations at the Airport, and that the taxes are contrary to the United States Internal Revenue Code and to the Convention on International Civil Aviation, December 7, 1944 (61 Stat. 1180, 1189) (the Chicago Convention). We affirm.

## I. FACTUAL BACKGROUND

The parties stipulated to the following facts: Air China is a corporation organized and existing under the laws of the PRC and is engaged exclusively in international air transportation serving various cities throughout the world

---

[1] Unless otherwise indicated, all subsequent statutory references are to the California Revenue and Taxation Code.

including San Francisco. Air China operates aircraft out of the Airport and leases space there that it uses exclusively for its air transportation operations.

The United States and the PRC are parties to a tax treaty—Agreement Between the Government of the United States of America and the Government of the People's Republic of China with Respect to Mutual Exemption from Taxation of Transportation Income of Shipping and Air Transport Enterprises (Sen. Treaty Doc. No. 97-24, 97th Cong., 2d Sess. (1982) (Tax Treaty)). The Tax Treaty exempts both the United States and the PRC from taxation by the other party for income and profits generated from the operation of aircraft in international air transportation.

Air China leases space from the Airport and makes payments for the use of the premises. Air China also pays landing fees for the right to land at the Airport. Since 2000, the County has imposed property taxes including possessory interest taxes on Air China's leasehold improvements and landing rights at the Airport. Air China has paid these taxes under protest.

On October 21, 2002, California's State Board of Equalization (Board) issued an opinion letter in response to an inquiry by Air China concerning the Tax Treaty's tax exemption. The Board concluded that the County's imposition of any property tax on Air China's aircraft or other property including possessory interests was prohibited by the Tax Treaty.

In May 2006, Air China requested a refund of taxes under section 5096. The County did not issue a formal response to the request. In February 2007, Air China commenced this action seeking a refund and a declaration that the possessory interest taxes imposed are prohibited by the Tax Treaty. The parties subsequently filed motions for summary judgment based on the above stipulated facts. The court granted the County's motion, finding that the Tax Treaty did not prohibit imposition of taxes on Air China's possessory and leasehold interests and denied Air China's motion. This appeal followed.

## II. DISCUSSION

A. *Standard of Review*

This appeal presents a question of law on stipulated facts. We therefore review the trial court's judgment de novo. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081–1082 [36 Cal.Rptr.3d 650].)

B. *The County Has the Right to Tax Air China's Possessory Interests*

■ The County has the right to assess taxes on property within its jurisdiction. (Cal. Const., art. XIII, § 1; see also Rev. & Tax. Code, § 201 [all

property within the state is subject to taxation if not exempt under federal law or other state law].) Pursuant to section 107, the County may tax possessory interests in land or improvements if certain conditions are met. A possessory interest is a "[p]ossession of, claim to, or right to the possession of land or improvements . . . , except when coupled with ownership of the land or improvements in the same person." (§ 107, subd. (a).) In order for a possessory tax to be valid, the right of possession in the property must be independent, durable, and exclusive of rights held by others in the property. (*United Air Lines, Inc. v. County of San Diego* (1991) 1 Cal.App.4th 418, 427, fn. 5 [2 Cal.Rptr.2d 212]; *Freeman v. County of Fresno* (1981) 126 Cal.App.3d 459, 463 [178 Cal.Rptr. 764].) " '[T]axation of possessory interests is rooted in the belief that "the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity." [Citations.]' " (*Korean Air Lines Co., Ltd. v. County of Los Angeles* (2008) 162 Cal.App.4th 552, 560–561 [76 Cal.Rptr.3d 26] (*Korean Air Lines*), quoting *City of San Jose v. Carlson* (1997) 57 Cal.App.4th 1348, 1352–1353 [67 Cal.Rptr.2d 719].)

Here, the County assesses a property tax based on Air China's possessory interests in the occupancy and use of the Airport's international terminal/customs space and facilities. The tax is based upon the value of rent Air China pays over the term of the lease. In determining the tax, the County gives no consideration to Air China's earnings or profits. Likewise, there is no consideration given to Air China's income in assessing the tax for its possessory interests in the landing rights at the Airport. This assessment is based on the value of Air China's right to use the airfield runways, taxiways, and appurtenant aircraft accessible facilities. The value of the landing rights is prescribed by statute in section 107.9 and is calculated using Air China's prior year's annual aircraft landed weights, one-half of the applicable Airport landing fee rate, and the anticipated term and expense rate specified in the statute.

In *Korean Air Lines*, the court addressed the propriety of a county's imposition of a similar tax on a foreign airline's possessory interest in common airport terminal facilities. (*Korean Air Lines, supra*, 162 Cal.App.4th at p. 558.) The court determined that Korean Air's use of the federal inspection service area at the airport met the independent, exclusive and durable criteria to constitute a taxable possessory interest under section 107, subdivision (a). "Just as the shared use of property with others does not defeat the exclusivity requirement for taxability, but merely affects valuation of the taxable interest [citation], similarly the shared control of property with government does not defeat the 'independence' requirement, but merely affects the valuation of the taxable interest." (*Korean Air Lines*, at p. 569.) The court concluded that the durability requirement was also met because

Korean Air had the right to use the facilities pursuant to a lease for the period from 1992 through the 2001 date of its assessment appeal, a period sufficient to establish that its right was durable within the meaning of section 107, subdivision (a). (*Korean Air Lines*, at pp. 569–570.)

Here, the question of whether the County's tax on Air China's possessory interests in landing rights and leasehold improvements at the Airport meets the statutory requirements of section 107 was not disputed in the trial court and is not before us. Air China, however, suggests in its reply brief that the County is prohibited from imposing any property taxes because it does not own any property at the Airport and its use of the terminal space, taxiways, and runways is not exclusive. While it does not make this argument in the context of the exclusivity requirement of section 107, it is well settled that shared use of property with others affects only the valuation of the possessory interest and does not defeat the exclusivity requirement of section 107. (*Korean Air Lines Co., supra*, 162 Cal.App.4th at p. 569.)

C. *The Tax Treaty Does Not Prohibit the County from Taxing Air China's Possessory Interests at the Airport*

Air China contends that the Tax Treaty prohibits the County from imposing any taxes on income and profits it derives from its air transportation operations to or from the United States. It argues that the County's taxation of its possessory interests in the use of landing and common terminal facilities violates the Tax Treaty.

Article I of the Tax Treaty provides: "Income and profits of an enterprise of a Contracting State from the operation of ships or aircraft in international traffic shall be taxable only in that Contracting State." The Tax Treaty prohibits both the United States and the PRC from taxing the income or profits derived from airport transportation enterprises engaged in by one country's companies in the other country. It makes no mention of property taxes and there is nothing in the language of the treaty that proscribes them.

The rules governing the interpretation of international tax treaties are established. "The clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.' " (*Sumitomo Shoji America, Inc. v. Avagliano* (1982) 457 U.S. 176, 180 [72 L.Ed.2d 765, 102 S.Ct. 2374], quoting *Maximov v. United States* (1963) 373 U.S. 49, 54 [10 L.Ed.2d 184, 83 S.Ct. 1054].)

Here, nothing in the language of the treaty either applies to taxation of possessory interests or exempts air transportation enterprises from property taxation. The Tax Treaty specifically exempts only "taxation of transportation

income of shipping and air transport enterprises." The Tax Treaty defines income and profits from the operation of ships and aircraft to include income and profits from the operation of passenger, cargo, or mail transportation service by the owner or charterer of an aircraft, and the sale of tickets related to that transportation. (Tax Treaty, *supra*, art. II, ¶ 1.(a).) And there is a provision exempting the PRC's residents from paying taxes in the United States on salaries derived from employment by the PRC enterprise as a crewmember on an aircraft operated in international traffic. (*Id.*, art. V.) But there is no provision proscribing the imposition of property taxes. The plain language of the treaty affords Air China no relief from the County's taxation of its possessory interests in its use of landing and common terminal facilities at the Airport.

The legislative history of the Tax Treaty supports our interpretation that the treaty was intended solely as an agreement to exempt income taxes. It states that the treaty was intended "to eliminate potential double taxation of certain income earned by enterprises and residents of either country from shipping and air transportation" and expressly notes that it is an "income tax agreement." (Sen. Com. on Foreign Relations, Rep. on Shipping & Aircraft Tax Agreement with the Government of the People's Republic of China (Treaty Doc. 97-24), Exec. Rep. No. 98-14, 1st Sess., pp. 1–2 (1983).) We have found nothing in the legislative history which reflects an intent to prevent imposition of local property taxes. The legislative history does contain language indicating that state and local governments have reciprocal rights to impose *income* taxes: "[I]f any state or locality of the United States imposes tax on PRC enterprises on income and profits from the operation of ships or aircraft in international traffic, then the People's Republic of China may impose any local surcharge on such income and profits of U.S. enterprises." (*Id.* at p. 6.) But there is no similar language pertaining to property taxes.

Air China relies, primarily, on *Scandinavian Airlines System, Inc. v. County of Los Angeles* (1961) 56 Cal.2d 11 [14 Cal.Rptr. 25, 363 P.2d 25] (*Scandinavian Airlines*) as applicable precedent. The *Scandinavian Airlines* case addressed the issue of whether a county could impose property taxes on foreign-owned airplanes flying exclusively in foreign commerce and using the Los Angeles airport infrequently as its sole United States terminal. The California Supreme Court determined that taxation of airplanes engaged solely in commerce with foreign nations is vested exclusively at the home port of the airplanes. (*Id.* at pp. 35–36.) Under the home-port doctrine, "no jurisdiction, other than that of the true domicile, may tax instrumentalities of communication engaged in foreign commerce." (*Id.* at p. 32.) The court determined that the home-port doctrine applied to foreign-owned and foreign-based and registered aircraft flown exclusively in foreign commerce having a single United States port. (*Id.* at pp. 32–33.) Further, the court held that the

tax treaty between the United States and Sweden specifically prohibited income and property taxes on aircraft not registered in the taxing nation. (*Id.* at p. 39.)

Air China also relies on *Japan Line, Ltd. v. County of Los Angeles* (1979) 441 U.S. 434, 451–452 [60 L.Ed.2d 336, 99 S.Ct. 1813] (*Japan Line*). There, the United States Supreme Court held that a property tax on a Japanese shipping line's cargo containers that were temporarily within the state but used exclusively in foreign commerce violated the commerce clause because the tax resulted in multiple taxation of instrumentalities of foreign commerce and prevented the United States from " 'speaking with one voice' " in regulating foreign trade.

Neither *Scandinavian Airlines, supra*, 56 Cal.2d 11, nor *Japan Line, supra*, 441 U.S. 434, supports Air China's argument. The County's tax on Air China's possessory interests is not a tax on its aircraft as was the tax in *Scandinavian Airlines*, and it is not prohibited by the Tax Treaty. And, unlike the tax considered in *Japan Line*, the tax here poses, no risk of multiple taxation because the property being taxed is fixed permanently within the County and not subject to taxation in any other location, including the PRC. Nor is there any evidence in the record that the County's taxation of possessory interests infringes on federal uniformity in this area. In short, we take the Tax Treaty at face value; had the parties wished to create an exemption from any and all types of taxation, they could have done so.

Air China urges us to defer to the Board's opinion letter of October 21, 2002, which purports to support Air China's argument that the Tax Treaty exempts Air China from the imposition of real property taxes. We decline to do so for three reasons.

First, it is not at all clear that the question posed to the Board was the same question posed either to the trial court or to this court. Conspicuously absent from the record is *any* copy of the letter from Air China to the Board requesting an opinion concerning its taxable status, while the record contains multiple copies of the Board's opinion letter in response to the phantom letter from Air China. The absence of Air China's letter is particularly salient because the Board's opinion letter seems to focus almost entirely on the question of the taxable status of Air China's *aircraft*, a question that is not before us.[2]

---

[2] In its letter concluding that Air China was exempt from taxes, the Board begins by referring to section 5331 (providing that *aircraft* owned by the United States or any foreign government are exempt from personal property taxation), and then states that this statute "appears to provide a simple and clear answer to your inquiry if the *aircraft* are, in fact, owned by a foreign government." (Board letter, Oct. 21, 2002, italics added.) The Board then relies on

Second, assuming the Board's opinion did address the taxable status of Air China's leasehold interests in real property, it is not entitled to deference. Air China contends that we should defer to the opinion letter because the Board "possesses expertise and specific legislative authority to interpret legislation imposing property taxes." It is true the courts commonly give great credence to an agency's interpretation of the statutes and regulations it is charged with enforcing. (*Maples v. Kern County Assessment Appeals Bd.* (2002) 96 Cal.App.4th 1007, 1015–1016 [117 Cal.Rptr.2d 663] [judicial deference is given to an agency's "contemporaneous administrative construction of a regulation by the agency charged with its enforcement"]; *Ordlock v. Franchise Tax Bd.* (2006) 38 Cal.4th 897, 910 [44 Cal.Rptr.3d 212, 135 P.3d 628] [courts afford "significant weight and respect to long-standing statutory construction . . . by the agency charged with enforcement of the statute"]; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [Board's interpretations of tax law are entitled to the "consideration and respect" of courts].) As Air China readily concedes, however, the opinion is based on the Board's interpretation of the Tax Treaty, not any statute or regulation the Board is charged with enforcing.

Third, even if deference were due to the Board's opinion, we would reach the same conclusion on the merits. The letter acknowledged that the Tax Treaty exempted only the taxation of income and profits, and correctly summarized the holdings of *Scandinavian Airlines, supra*, 56 Cal.2d 11, and *Japan Line, supra*, 441 U.S. 434 which proscribed taxation on foreign-owned aircraft and cargo containers ("instrumentalit[ies] of foreign commerce"). Under the circumstances, its conclusion (if any) that the tax exemption extended to property taxes on possessory interests in real property was erroneous, for the same reasons we rejected Air China's argument—it had no grounding in the express language of the Tax Treaty or the cited case law.[3]

---

the *Scandinavian Airlines* holding that "Los Angeles County was barred by international treaty from imposing property taxes on *aircraft*." (Board letter, Oct. 21, 2002, italics added.) The Board goes on to explain that taxes on *aircraft* of foreign countries generate a "strong possibility of a retaliatory tax" and "could jeopardize one of the purposes of the [Treaty] and subject the *aircraft* of U.S. carriers to a retaliatory tax." (*Ibid.*, italics added.) The Board concludes with its opinion that "the imposition of any property tax on aircraft and other property owned or leased by Air China, including possessory interests, is prohibited under the [Treaty]," and "[t]he ramifications of subjecting these *aircraft* to property taxation could have a significant impact on other states and would inhibit the federal government from speaking with one voice when regulating commercial relations with foreign governments." (*Ibid.*, italics added.)

The single, passing reference to a tax on (unidentified) "possessory interests" in the context of a letter that repeatedly refers to the taxable status of Air China's *aircraft*, strongly suggests that the Board was answering a different question than that posed in this lawsuit.

[3] The Board's opinion also ignored countervailing decisions holding that similar, locally imposed taxes did not violate federal policies or the commerce clause. (*Wardair Canada v. Florida Dept. of Revenue* (1986) 477 U.S. 1, 9 [91 L.Ed.2d 1, 106 S.Ct. 2369] [sales tax on

D. *The County's Tax Does Not Violate the Internal Revenue Code or the Convention*

Air China argues that the County's taxation of its possessory interests in its landing rights and use of common terminal facilities at the Airport is an indirect tax on its income and, thus, contrary to United States Internal Revenue Code section 883(a)(2).

■ United States Internal Revenue Code section 883(a)(2) "exempt[s] from taxation . . . [¶] . . . [¶] [g]ross income derived by a corporation organized in a foreign country from the international operation of aircraft if such foreign country grants an equivalent exemption to corporations organized in the United States." Air China argues that the taxes on its possessory interests here are in effect indirect income taxes and thus preempted by the United States Internal Revenue Code. It relies on *Aloha Airlines, Inc. v. Director of Taxation* (1983) 464 U.S. 7, 10, 14–15 [78 L.Ed.2d 10, 104 S.Ct. 291], where the United States Supreme Court invalidated a tax on an airline's gross income that was imposed as " 'a means of taxing the personal property of the airline . . . .' " The court determined that even though the tax was labeled as a personal property tax, it was not exempt under former section 1513(a) of title 49 of the United States Code, which proscribes the imposition of state and local taxes on gross receipts derived from air transportation, because "a property tax that is measured by gross receipts constitutes at least an 'indirect' tax on the gross receipts of airlines." (*Aloha Airlines*, at pp. 10, 13–14.)

Here, the tax on possessory interests in Air China's landing rights and leasehold improvements is not a tax on gross income, but is in actuality a property tax. In assessing the taxes, the County gave no consideration to Air China's income or profits, and the taxes were based on the assessed value of Air China's leasehold interest and the value of its landing rights. United States Internal Revenue Code section 883 does not restrict the County from imposing a tax on these possessory interests.

■ Finally, Air China argues that the taxes imposed violate the Convention. The Convention provides that "[n]o fees, dues or other charges shall be imposed by any contracting State in respect solely of the right of transit over or entry into or exit from its territory of any aircraft of a contracting State of persons or property thereon." (Convention, *supra*, 61

---

airplane fuel did not implicate foreign commerce clause nor threaten the ability of the federal government to " 'speak with one voice' "]; *Itel Containers Int'l Corp. v. Huddleston* (1993) 507 U.S. 60, 74–76 [122 L.Ed.2d 421, 113 S.Ct. 1095] [sales tax imposed on income from leases of international shipping containers does not impinge on federal authority or foreign policy].)

Stat. 1185.) Contrary to Air China's argument, the taxes assessed are not fees infringing on Air China's right to land in the United States, but rather are taxes on its possessory interests in the Airport's facilities. The Chicago Convention is not implicated.

## III.  DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied June 16, 2009, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 26, 2009, S174250.