Filed 9/29/16  P. v. Gwozdz CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LINDA DOREEN GWOZDZ,<br><br>Defendant and Appellant. | B264109<br><br>(Los Angeles County<br>Super. Ct. No. VA124916) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed as modified.

Leslie Conrad, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Nathan Guttman, Deputy Attorney General, for Plaintiff and Respondent.

———————————

On January 23, 2015, following a mistrial in January 2014, a jury convicted Linda Doreen Gwozdz (Gwozdz) of second degree murder (Pen. Code, § 187, subd. (a)).[1]  The victim, Patrick Duffey (Duffey), died on the afternoon of April 26, 2007, at his home in Whittier, California, a home that he shared with his then wife, Gwozdz, and two teen-aged sons.  Duffey died from two gunshot wounds in the "top of the head" fired at close range—experts variously estimated that the gunshots were fired from a distance of "less than two to three feet," "greater than one inch but less than seven inches," and "between six inches to three feet."  It was undisputed that Gwozdz fired the fatal shots—not only was there gunshot residue on her hands, but she admitted as much on the call she made to 911.  The central issue at trial was whether Gwozdz shot her then husband accidentally or deliberately.  The police interviewed Gwozdz several times:  twice on the day of Duffey's death (once briefly at the house and then later and at greater length at the police station); and then again for several hours on January 23, 2009.  In each interview, she maintained that the shooting was an accident.  It was not until January 2013 that the People charged Gwozdz with Duffey's murder.

On appeal, Gwozdz argues that the trial court committed prejudicial error when it excluded statements she made at the scene of the crime describing the shooting to one of the police officers who responded to her 911 call.  Gwozdz contends that her statements were admissible as spontaneous declarations pursuant to Evidence Code section 1240, and that she did not forfeit her right to raise this issue on appeal even though her counsel failed to make the "substance, purpose and relevance of the excluded evidence" known to the trial court through an offer of proof pursuant to Evidence Code section 354, subdivision (a).  Alternatively, Gwozdz argues that if her claim is forfeited due to her counsel's failure to make an offer of proof, reversal is still required because such a failure demonstrates that she was denied the effective assistance of counsel.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

For the reasons discussed below, we affirm.[2]

## BACKGROUND

### A. THE CRIME SCENE

On April 26, 2007, at 2:51 p.m., Gwozdz called 911. She told the 911 operator that her "husband was going to go . . . shooting at a shooting range" and "he was showing [her] how to use [a gun] and [she] accidentally shot him." Gwozdz further explained that "he was laying down, and he was showing me [the gun] and it went in his head." She continued, "My husband said the gun didn't have any bullets in it. I thought that's what he told me. . . . A long time ago, he showed me how to pull the thing back on the top of the gun and pull the trigger real fast. And that's what I did." Gwozdz told the 911 operator that her husband was still breathing and that she was following the operator's instructions to apply pressure to the wound. Gwozdz hung up the phone when the emergency responders arrived.

When the emergency responders arrived, they found Gwozdz behind the couch holding a towel to Duffey's head, "[c]rying" and "[s]obbing." Duffey did not appear to be breathing or actively bleeding, other than some blood dripping from his nose. Duffey was lying on his back on the couch; his head rested on a pillow and faced toward the television, which was on; his right hand was next to his body on the back of the couch, and his left hand was inside his pants pocket; his legs were straight, with his right foot balanced on his left; a pillow under his knee propped up his right leg. Blood had soaked into the couch, pooled on the floor below and near the couch, and spattered the nearby walls and furniture. Firefighters tried unsuccessfully to save Duffey's life.

---

[2] With regard to the judgment, the People have noted that a minor error occurred as to the imposition of certain mandatory fines; specifically, the court omitted to impose a $300 parole revocation restitution fine pursuant to section 1202.45, subdivision (a). In her reply brief, Gwozdz does not contest this error. Accordingly, while we affirm the judgment, as discussed below, we also remand this matter to the trial court for the limited purpose of modifying the judgment so that it imposes the mandatory $300 parole revocation restitution fine but stays the execution of that fine unless and until parole is revoked. (See § 1202.45, subd. (c).)

One of the very first emergency responders was Detective Bruce Goldowski (Goldowski) of the Los Angeles County Sheriff's Department. Upon entering the house, Goldowski first "secured" the premises—that is, made sure there were no threats to the occupants and emergency responders—and then had the fire department paramedics render aid to Duffey. At some point after entering the house, Goldowski escorted Gwozdz to another room and asked her to tell him what had happened. Gwozdz told him that she had accidentally shot Duffey while practicing fan-firing or "rapid-firing" a double-action revolver, demonstrating how she would hold the gun with one hand while using the other to brush back the gun's hammer. Gwozdz also told the detective that Duffey had "laid down in front of the barrel" just as "the gun went off." Goldowski subsequently wrote up a report summarizing Gwozdz's statements about the shooting.[3]

B. THE FIRST TRIAL

During the first trial, the People made Gwozdz's various statements to the police the centerpiece of their case. Specifically, the People attempted to advance two points: first, Gwozdz's statements were internally inconsistent—instead of telling one story over and over again, she told "many different versions" of the purported accident; and second, Gwozdz's statements were inconsistent with the physical evidence, such as Duffey's position on the couch, the medical testimony about the effect of the bullet wounds on Duffey's ability to speak, and the mechanical characteristics of the revolver used in the killing (e.g., the visibility of the bullets in the cylinder and the comparative difficulty of "fan-firing" a double-action revolver versus a single-action revolver). As a result of this strategic decision, a significant portion of the first trial involved expert testimony from

---

[3] At both trials, the People argued that Gwozdz's version of events was not credible and inherently suspect given, inter alia, the positioning of Duffey's body on the couch—lying in a relaxed position with his left hand in his pocket, right hand on the back of the couch, one leg elevated on a pillow, and his head turned toward the television; such a position suggested, according to the People, that Duffey was asleep when he was shot, not giving a shooting lesson to Gwozdz who was behind, not in front of, the couch when she shot him twice.

both sides regarding revolvers and their ability to be fired rapidly, and blood splatter patterns.

On January 22, 2014, after hearing seven days of testimony and argument, and after deliberating over the course of three days, the jury failed to reach a unanimous verdict, and, as a result, the court declared a mistrial.

C.    THE SECOND TRIAL

As noted by the trial court, "the People made certain strategic decisions which changed the tenor" of the second trial.  The single greatest change was that the People greatly simplified their case.  They did so in two ways.  First, instead of utilizing all of Gwozdz's statements as they had done in the first trial, the People relied on just one statement:  the 911 call.  Second, the People significantly reduced the expert testimony they presented.  Among other things, the People did not recall their blood splatter expert and they sharply circumscribed the testimony of their gun expert, eliminating from their direct examination any discussion about "fan firing."

A possible harbinger of this change in strategy by the People occurred in October 2014, several months before the second trial began.  On October 14, 2014, Gwozdz moved to "PRESERVE" the evidentiary rulings from the first trial for use during the second trial.  The People did not oppose the motion but also did not offer any argument in support of the motion at the hearing.  On October 30, 2014, the trial court denied the motion, stating that "this is a brand new trial."

In any event, the People's new strategy became clear when they once again called Goldowski as their first witness.  In contrast to the first trial, the People did not ask Goldowski any questions about the substance of what Gwozdz told him about how the shooting occurred.  Instead, the People confined their direct examination principally to Goldowski's observations of the crime scene.  On cross-examination, Gwozdz's counsel attempted to have Goldowski testify about the statements made to him by Gwozdz, but the People objected that such a question called for hearsay.  The trial court sustained the objection and Gwozdz's counsel did not make an offer of proof or otherwise attempt to convince the court that there was a viable exception to the hearsay rule that would render

5

the anticipated testimony admissible. Instead of making an offer of proof, Gwozdz's counsel proceeded to ask a series of questions designed to elicit the conclusions Goldowski had reached about the shooting both before he arrived at the Duffey house and after he had left; the People objected to these questions on a variety of grounds and the court sustained those objections.

On January 23, 2015, after hearing six days of testimony and argument, and after deliberating over the course of three days, the jury found Gwozdz guilty of second degree murder. The jury further found that Gwozdz personally and intentionally discharged a firearm in the commission of the murder. On April 24, 2015, the court sentenced Gwozdz to a term of 15 years to life in state prison for the murder plus an additional term of 25 years to life for the firearm enhancement. Gwozdz timely appealed.

## DISCUSSION

### A. *GWOZDZ FORFEITED CONSIDERATION OF THE ALLEGED ERROR ON APPEAL*

Gwozdz argues that the trial court prejudicially compromised her right to a fair trial and a defense by sustaining the People's hearsay objection to testimony by Goldowski about statements about the shooting that she made to him at the house. Gwozdz further argues, for the first time on appeal, that the statements she tried to elicit were admissible as spontaneous declarations pursuant to Evidence Code section 1240— that is, those descriptive out-of-court statements were trustworthy, and hence admissible, because they were made under stress of the situation. As discussed below, Gwozdz failed to take the necessary steps to preserve this issue for appellate review.

### 1. *Standard of review*

Generally, "[a] trial court's decision to admit or exclude evidence is reviewable for abuse of discretion." (*People v. Vieira* (2005) 35 Cal.4th 264, 292.) An abuse of discretion standard requires the reviewing court to uphold the exclusion of evidence unless the reviewing court finds the trial court acted arbitrarily, capriciously, or in a patently absurd manner and that the exclusion of the evidence resulted in a manifest miscarriage of justice. (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.)

6

## 2. *The need for an offer of proof*

When a trial court denies a defendant's request to produce evidence, the defendant must make an offer of proof in order to preserve the issue for consideration on appeal. Evidence Code section 354 states the rule: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means . . . ." As explained by our Supreme Court in *People v. Ramos* (1997) 15 Cal.4th 1133, the offer of proof is "a condition precedent to challenging the exclusion of proffered testimony" and this requirement "applies equally to establishing a hearsay exception." (*Id.* at p. 1178.)

In *People v. Ramos*, *supra*, 15 Cal.4th 1133, during the direct examination of a witness, the prosecutor made two hearsay objections to questions regarding the contents of letters the witness received from another person around the time of the crimes. (*Id*. at p. 1178.) "In response, [the] defendant did not make an offer of proof as to the substance of the anticipated testimony, cite a hearsay exception, or argue a nonhearsay purpose. Accordingly, he failed to preserve the issue." (*Ibid*.)

Similarly, in *People v. Livaditis* (1992) 2 Cal.4th 759, the defendant argued, as here, that the trial court prejudicially erred in sustaining the prosecution's hearsay objections to various testimony. (*Id*. at p. 777–778.) Our Supreme Court held that the defendant failed to preserve the issue for appeal by not making an offer of proof to the trial court. (*Id*. at p. 778.) Although the relevancy of the subject testimony (to show the defendant's remorse) was revealed to the trial court—the witnesses answered the questions before the objections were sustained— the defendant "did not show that the testimony came within an exception to the hearsay rule, and did not attempt, by offer of proof or otherwise, to lay the proper foundation for that exception." (*Ibid*.) "Defendant

did not even suggest the hearsay statements were admissible under some exception." (*Id.* at p. 779.)

The requirement for an offer of proof follows from the touchstone principle that the "proponent of proffered testimony has the burden of establishing its relevance, and if the testimony is comprised of hearsay, the foundational requirements for its admissibility under an exception to the hearsay rule. [Citations.] Evidence is properly excluded when the proponent fails to make an adequate offer of proof regarding the relevance or admissibility of the evidence." (*People v. Morrison* (2004) 34 Cal.4th 698, 704.)

The offer of proof serves two critical functions. First, it helps the trial court reach a fully informed decision. By making an offer of proof, the proponent of the proffered evidence gives the opposing party a chance to explain more fully the basis for its objection, thereby providing the trial court with greater clarity. The need for clarity is especially pressing with regard to hearsay: "The proponent of hearsay has to alert the court to the exception relied upon and has the burden of laying the proper foundation." (*People v. Livaditis*, *supra*, 2 Cal.4th at p. 778.) As explained by the Law Revision Commission, "if the disputed preliminary fact is whether the proffered statement was spontaneous, as required by Section 1240, the proponent would have the burden of persuading the judge as to the spontaneity of the statement." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code (2004 ed.) foll. § 405, p. 185.) In short, the offer of proof provides a valuable pause in the proceeding which allows the trial court to reconsider and change and/or clarify its ruling.

Second, the offer of proof assists the reviewing court. ""Before an appellate court can knowledgeably rule upon an evidentiary issue presented, it must have an adequate record before it to determine if an error was made." [Citation.]' [Citation.] 'The offer of proof exists for the benefit of the appellate court. The offer of proof serves to inform the appellate court of the nature of the evidence that the trial court refused to receive in evidence . . . . The function of an offer of proof is to lay an adequate record for appellate review . . . .'" (*Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 93–94.)

8

### 3. Cross-examination and the need for an offer of proof

Evidence Code section 354 also provides an exception to the offer of proof requirement— if the trial court excludes evidence on cross-examination, no offer of proof is necessary to preserve the issue for consideration on appeal. (Evid. Code, § 354, subd. (c).)

However, there are exceptions to this exception. For example, "[i]f the evidence the defendant seeks to elicit on cross-examination is not within the scope of the direct examination, an offer of proof is required to preserve the issue." (*People v. Foss* (2007) 155 Cal.App.4th 113, 127.) Similarly, if the cross-examination is not exploratory in nature—that is, the defendant knows the substance of the information sought on cross-examination—and/or it is apparent the trial court does not recognize the theory of relevancy, an offer of proof is required. (See *People v. Allen* (1986) 42 Cal.3d 1222, 1270, fn. 31; *People v. Burton* (1961) 55 Cal.2d 328, 344–345; *People v. Coleman* (1970) 8 Cal.App.3d 722, 729–731; *People v. Lancaster* (1957) 148 Cal.App.2d 187, 196.)

### 4. Gwozdz failed to make the necessary offer of proof

Here, as in *People v. Ramos*, *supra*, 15 Cal.4th 1133, and *People v. Livaditis*, *supra*, 2 Cal.4th 759, Gwozdz did not make an offer of proof as to the substance of the anticipated testimony by Goldowski, cite a hearsay exception, or argue a nonhearsay purpose. This failure is not excused because Gwozdz tried to introduce the testimony at issue during cross-examination of Goldowski. The subject of her statements to Goldowski were not raised during the People's direct examination of the detective and her cross-examination of the detective was not exploratory in nature—Gwozdz and her counsel not only had Goldowski's report summarizing his conversation with Gwozdz at the house, but they also had his prior trial testimony about her statements. In other words, Gwozdz already knew Goldowski's expected testimony.

On appeal, Gwozdz makes a reasonable case that her statements to Goldowski may have been admissible as spontaneous declarations—she made the statements to Goldowski shortly after he arrived at the house and before he secured the crime scene, and when Goldowski first saw Gwozdz she "sounded somewhat hysterical." However,

9

because she did not make an offer of proof, the People were not able to argue to the trial court that Gwozdz's statements were inadmissible as spontaneous declarations because, for example, they were made under police questioning, and they were made to Goldowski after he secured the house (but not the crime scene), and, based on the lack of blood on her, that the statements were made some considerable time after she had fired the first shot—that is, there was time for her to collect her wits and "'to contrive and misrepresent.'" (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) In other words, the People could have argued that statements to Goldowski were not excited utterances, but calculated, self-serving testimonials. However, the People were not able to make such arguments and the trial court was not able to consider and weigh both sets of arguments, because Gwozdz failed to make the necessary offer of proof.

In short, because Gwozdz's trial counsel never raised the issue of a hearsay exception, the facts relevant to determining whether a hearsay exception applied were never fully developed, nor subjected to confrontation by the People, nor subjected to the factfinding and discretionary functions of the trial judge. On the basis of the record before us, we cannot say that the trial court acted arbitrarily, capriciously or in a patently absurd manner by sustaining the People's hearsay objection to testimony by Goldowski about Gwozdz's statements to him at the house. Accordingly, we uphold the trial court's decision.

B. *GWOZDZ'S INEFFECTIVENESS OF COUNSEL ARGUMENT IS PREMATURE*

Gwozdz argues that to the extent her counsel's "omissions result in the forfeiture of the argument on appeal, [she] was denied effective assistance of counsel." According to Gwozdz, "reversal is required here because the record reveals no rational tactical reason for [her] counsel's failure to adequately protect the record for appellate purposes." As discussed below, we decline to review this claim.

1. *Standard of review*

To prevail on a claim of ineffective assistance of counsel, defendant must establish her attorney's representation fell below professional standards of reasonableness and must affirmatively establish prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668,

10

687; *People v. Hart* (1999) 20 Cal.4th 546, 623–624.) If the defendant's showing is insufficient as to one component of this claim, we need not address the other. (*Strickland*, at p. 697.)

However, "[a] claim on appeal of ineffective assistance of counsel must be rejected "'[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'" [Citations.] Unless the record affirmatively discloses that counsel had no tactical purpose for his act or omission, 'the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at which evidence dehors the record may be taken to determine the basis, if any, for counsel's conduct or omission.'" (*People v. Hinds* (2003) 108 Cal.App.4th 897, 901.)

As our Supreme Court observed in *People v. Mendoza Tello* (1997) 15 Cal.4th 264 (*Mendoza Tello*), "[b]ecause claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding, the rules generally prohibiting raising an issue on habeas corpus that was, or could have been, raised on appeal [citations] would not bar an ineffective assistance claim on habeas corpus." (*Id.* at p. 267.) In *Mendoza Tello*, the Supreme Court unanimously reversed the Court of Appeal's reversal of the defendant's conviction on the grounds that counsel was ineffective for failing to make a suppression motion; the court did so due to gaps in the record: "On this record, we do not know what [the deputy] would have said had he been asked at a suppression hearing why he did what he did . . . . [P]erhaps he did have a reason, of which defense counsel was aware, and which justified counsel's actions. Perhaps there was some other reason not to suppress the evidence." (*Ibid.*) "No one gave [the deputy] the opportunity to point to any specific and articulable facts justifying his actions. Nor did the prosecution have the opportunity to offer some other possible reason not to suppress the evidence." (*Ibid.*)

The lesson from *Mendoza Tello*, *supra*, 15 Cal.4th 264, is that an appellate court should not reverse "unless it can be truly confident *all* the relevant facts have been developed." (*Id.* at p. 267, italics added.) Or, as the court in *People v. Hinds*, *supra*, 108

11

Cal.App.4th 897, put it, "[w]e are wary of adjudicating claims casting aspersions on counsel when counsel is not in a position to defend his conduct. A claim of ineffective assistance of counsel instead is more appropriately made in a habeas corpus proceeding." (*Id.* at p. 902.)

### 2. *The record is too undeveloped to support direct appellate review*

Here, we decline to review Gwozdz's ineffectiveness of counsel claim because the record does not contain any explanation for her counsel's conduct, or necessarily rule out a satisfactory one.

Gwozdz argues that there was "no rational tactical reason" and "no satisfactory explanation" for counsel's failure to adequately protect the record. However, the People have advanced a number of potentially meritorious arguments why Gwozdz's counsel made a "reasonable tactical decision[]" to rely on the description of the shooting in the 911 call and that this decision was part of a "coherent and viable . . . strategy," which had previously resulted, albeit not in an acquittal, but in a mistrial. What is missing is direct evidence about the strategy and tactical decisions by Gwozdz's counsel. "Action taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record. It is for this reason that writ review of claims of ineffective assistance of counsel is the preferred review procedure. Evidence of the reasons for counsel's tactics, and evidence of the standard of legal practice in the community as to a specific tactic, can be presented by declarations or other evidence filed with the writ petition." (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 243, citing Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1991) Writs, § 15.179.1, pp. 15–38.6, 15–38.7.)

Accordingly, we affirm "without prejudice to any rights [Gwozdz] may have to relief by way of a petition for writ of habeas corpus." (*People v. Garrido* (2005) 127 Cal.App.4th 359, 367.)

## DISPOSITION

The judgment shall be modified to reflect the mandatory $300 parole revocation restitution fine pursuant to Penal Code section 1202.45, subdivision (a).  The execution of that fine is stayed unless and until parole is revoked.  The superior court is directed to prepare an amended abstract of judgment reflecting these modifications and forward a copy to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


LUI, J.

13